LANGWORTHY and wife *against* CHADWICK.

A remainder in personal chattels dependant on an estate for life, may be created,
by grant or devise; and the interest so created, will be protected in chancery.
When there is danger that the property so given will be either wasted, secreted,
or removed out of the state, a court of chancery will protect the interest in
remainder, by compelling the tenant for life to give security.

THIS was a bill in chancery for an injunction and security. *Joseph Chadwick*, late of *Lyme*, in this State, by his last will and testament, executed on the 14th of *February*, 1821, devised and bequeathed to his wife, *Phebe Chadwick*, the defendant, the use and improvement of two third parts of all his real and personal estate, which he might leave at his decease, after paying his debts, charges, &c., *to have and to hold* the same during the time she should remain unmarried after his decease. To his son, *Joseph Chadwick*, jun., he devised one hundred acres of land, reserving to his wife and to his daughter *Julia Ann*, one of the plaintiffs, the use and improvement thereof, so long as the former should remain his widow, after his decease. To his daughter, *Julia Ann*, he gave the use and improvement of the remaining third part of his real and personal estate, during the time that his wife should remain his widow; and after her marriage or decease, he devised and bequeathed to this daughter, and to her heirs forever, the whole of his real and personal estate, except the one hundred acres so given to his son. His wife was appointed sole executrix; the testator died, shortly after the making of his will; and the defendant took upon herself the office and trust of executrix.

On the 24th of *January*, 1835, the personal property belonging to the testator's estate, amounting to 1837 dollars, was

distributed according to the provisions of the will. To the defendant, during the time she should remain single and unmarried, there was distributed the use of the following personal property, *viz.*, five shares of the stock of the *Phœnix Bank*, in *Hartford*, at 540 dollars; two shares of the *New-London and Lyme* turnpike stock, at 12 dollars; a note against *Nathaniel S. Perkins* and *Thomas S. Perkins*, at 517 dollars; part of a note against *Thomas S. Perkins*, at 41 dollars; and diverse articles of household furniture, amounting to the sum of 1224 dollars. The same property, which was so distributed to the defendant, during her widowhood, was set to the plaintiff, *Julia Ann*, (who had, since the testator's death, become the wife of *George F. Langworthy*,) forever after the termination of the defendant's use.

The defendant was requested by the plaintiffs, through their agent, to make some arrangement, by which the property distributed to her during her widowhood, might be secured in such a manner that they could have the benefit of it, when she had done with it; but she refused to do so; and also refused to give her word, that the property should not be so used that they could not have the benefit of it, whenever they should be entitled to it, unless she needed it for her own support.

Soon after the distribution, the defendant caused the shares of turnpike stock to be transferred into her own name, without any apparent necessity for such transfer. She collected 500 dollars of the money due on the note of *N. S.* and *T. S. Perkins*, which they wished to pay. This money she subsequently loaned to the town of *Lyme*, where it was safely invested at an interest of six *per cent. per annum*, and afterwards collected it of that town, without any request from them that she would receive it, and loaned it to an individual residing in the state of *New-York*, stating at the time, that she made the last-mentioned loan, so as to realize from it an interest of 7 *per cent. per annum*. The defendant has attempted to procure a transfer into her own name of the stock of the *Phœnix Bank*, standing in the name of the testator; but it has not been transferred, the president of that institution not deeming it proper, from the vouchers produced by her, to permit such transfer.

In *January*, 1837, the defendant left *Lyme* very suddenly, and went into the state of *New-York*, where she has ever

New-London, since resided.   The articles of  household furniture distributed
July, 1838. to her, were forwarded to her in the  state of New- York, by
Langworthy her direction, some time in the month of May or June, 1837.
v.
Chadwick.     Previous to her removal, the plaintiffs proposed to her to
take the personal property, that was distributed to her during
her widowhood, and give her ample security for the payment
of the interest, as long as 'she was entitled to it ; but this she
refused to consent to.   She has declared that neither of the
plaintiffs should be benefited one dollar, by the testator's estate,
if she could prevent it; that if she could get hold of the bank
stock, "Langworthy might whistle for it."

It did not appear that the defendant was possessed of any
property, except what she received from the estates of her hus-
band and father.   She was entitled, from the estate of her
father, to about 300 dollars.

She conveyed her interest in the real estate, devised to her
in the will of her husband, to the plaintiffs, and took a bond
and mortgage of the same property, to secure to her the pay-
ment of an annuity of 100 dollars.

Before the intermarriage of the plaintiffs, there was entire
harmony and good feeling between the defendant and said
Julia Ann ; but afterwards, difficulties arose between them in
relation to the distribution of the testator's estate ; and before
and at the time the defendant left Lyme for the state of New-
York, her feelings were very hostile towards the plaintiffs.

The defendant is a very industrious woman ; is intelligent,
and entirely competent to the management of her own proper-
ty ; and manages it in a skilful and prudent manner.   She
has not diminished, but by industry and good management,
has somewhat increased the amount of the property which she
received.

Upon these facts the superior court reserved the question,
whether any, and if any, what decree should be passed, for the
advice of this court.

Strong and McCurdy, for the plaintiffs, contended, that
they were entitled to the relief sought by the bill.   They re-
marked, 1. That formerly, the remainder-man might require
security from the tenant for life, that the property should be
forth-coming at his decease, without showing special cause.
Vachel v. Vachel & al. 1 Chan. Ca. 129.   Hyde v. Parratt

& al. 1 *P. Wms.* 1. *Bill* v. *Kinaston,* 2 *Atk.* 82. *Leeke* v. *Bennett,* 1 *Atk.* 471. *Ferrard* v. *Prentice, Ambl.* 273.

*New-London, July,* 1838.

Langworthy
*v.*
Chadwick.

2. That by the *modern* practice, security will be decreed where there is danger that the property will be wasted, secreted or removed. 2 *Sw. Dig.* 154. 2 *Kent's Com.* 286. 1 *Mad.* 178. 2 *Williams Exrs.* 856. 2 *Fearne* on *Exec. Dev.* 406. 413. (*6th Lond. ed.*) *Hudson* v. *Wadsworth,* 8 *Conn. Rep.* 348.

3. That the irresponsible condition of the defendent, and her removal out of the state, beyond the reach of its laws, would alone constitute a case of danger, justifying the interference of a court of chancery. *Hudson* v. *Wadsworth,* above cited.

4. That there is abundant other evidence, from the conduct, declarations, and disposition of the defendant towards the plaintiffs, that the property is in danger of being lost to them. The case is, therefore, much stronger than that of *Hudson* v. *Wadsworth.*

5. That a court of chancery alone can afford relief. The court of probate has jurisdiction only during the settlement of the estate ; and the settlement of this estate is closed.

*Isham,* contra, insisted, That there was, in this case, no ground for the interposition of a court of chancery. According to all the modern cases, there must be *danger of loss,* or equity cannot interfere. Here, there is no more danger of loss now, than there was at the testator's death. The bank stock remains in the name of the testator, and the defendant can do nothing with it, except to receive the dividends to which she is entitled. The turnpike stock, though in her name, is as safe as a lot of ground would be. As to the money at interest, it does not appear that it is insecure in the hands of the borrower. What reason is there to fear that any of the property will be lost? Is the defendant embarrassed or irresponsible? It is not so found. Is she incompetent to take care of it? No; quite the reverse. Is she careless and wasteful? Not at all : she is industrious ; and is, moreover, a skilful and prudent manager of property. Has she any inducement to destroy this fund? By so doing, she destroys her means of support. What has been the result thus far ; has the fund diminished in her hands? No ; but it has rather increased. True, it is,

*New-London,*
*July, 1838.*

*Langworthy*
*v.*
*Chadwick.*

or may be, subject to her controul? But did not the testator intend that it should be? She only asks the court not to frustrate her husband's will. She chooses to live in the state of *New-York.* May she not lawfully do this? Will the court interfere with her domestic arrangements? But she dislikes the plaintiffs, and does not intend they shall have any benefit from the property. This may not be exclusively her fault. She lived happily with her daughter, until her intermarriage with *Langworthy.* He has made all the difficulty. Shall this entitle him to be heard in a court of equity? Besides, if there is no danger that the property will be lost or wasted, of what avail is her enmity. It cannot survive her; and when the plaintiffs, by her death, become entitled to the enjoyment of the property, a court of law will protect their rights.

BISSELL, J. The only question in this case, is, whether upon the facts found by the superior court, the plaintiffs are entitled to the relief sought by their bill. It is now too well settled to admit of dispute, that a remainder in personal chattels, dependant on an estate for life, may be created by grant or devise: and it is equally well settled, that the interest so created would be protected in chancery.

It was formerly held, that the person entitled in remainder might call for security from the legatee for life, that the property should be forth-coming at his decease. *Vachel* v. *Vachel* & al. 1 *Chan. Ca.* 129. *Hyde* v. *Parratt* & al. 1 *P. Wms.* 1. *Bill* v. *Kinaston,* 2 *Atk.* 82. *Leeke* v. *Bennett,* 1 *Atk.* 471. *Ferrard* v. *Prentice, Ambl.* 273. But this practice has been overruled; and chiefly on the ground that to decree such security would be improperly to interfere with the will of the testator. And the course now is, for the remainder-man to call for the exhibition of an inventory, to be signed by the legatee for life, and deposited in court.

When, however, it can be shown, that there is danger that the property will be either wasted, secreted or removed, a court of chancery will interfere to protect the interest in remainder, by compelling the tenant for life to give security. And such, we suppose to be the well settled practice in *Westminster-Hall. Foley* & al. v. *Burnell* & al. 1 *Bro. Ch. Ca.* 279. *Batten* v. *Earnley,* 2 *P. Wms.* 164. *Slanning* & al. v. *Style,* 3 *P. Wms.* 335. 1 *Mad.* 178. 2 *Fearne,* 35. *Williams* on

*Executors* 859. *Rous* v. *Noble,* 2 *Vern.* 249. Indeed, the same regard to the intention of the testator, which forbids a court of chancery to decree that security shall be given, where there is no danger, would seem to require such interference, where that intention is likely to be defeated, by the conduct of the devisee for life. This highly reasonable principle has been recognized in this country, and was fully adopted, by this court, in the case of *Hudson* v. *Wadsworth* &. al. 8 *Conn. Rep.* 348. See also 2 *Sw. Dig.* 154. 2 *Kent's Com.* 287. 2 *Paige* 123.

*New-London,* July, 1838.

Langworthy *v.* Chadwick.

The case, it is conceded, is to be governed by *Hudson* v. *Wadsworth,* if the facts found bring it within the principle of that case : and upon this point, it is impossible to entertain a doubt. The facts in this case are, indeed, much stronger than that : for not only is the defendant found to be irresponsible, and to have removed out of the state, but she has also removed beyond the jurisdiction of the court whatever of the property she could controul, and has repeatedly threatened that she would so conduct with it as to defeat the rights of the plaintiffs.

We are, therefore, of opinion, that the prayer of the bill ought to be granted.

WILLIAMS, Ch. J., and CHURCH and HUNTINGTON, Js. concurred in this opinion.

WAITE, J. gave no opinion.

Decree for plaintiffs.