No. 42.—EDWARD BROUGHTON, administrator, &c. plaintiff in error, *vs.* CHARLES WEST, defendant.

[1.] The cutting off the name of a surety to a joint and several note, with the consent of the payee, is not such a material alteration as will invalidate it.

[2.] A limitation of a promissory note, in remainder, by deed or will : *Held*, to be good.

Assumpsit, from Troup County.   Decision by Judge HILL, at November Adjourned Term, 1849.

Charles West brought his action against Broughton, administrator of L. Lackey, on this note : " One day after date, I promise to pay Charles West, or bearer, five hundred dollars, for value received, with interest from 25th December last.   January 22, 1842."   Defendant's counsel objected, on the trial, to said note as

Broughton *vs.* West.

evidence, because it had been altered without the knowledge of Lackey, the maker, in this, that the name of one Thos. McKee, who had signed as surety, had been erased at his request—erased by West, the holder. An ante-nuptial settlement deed was then read, which settled upon trustees, for the sole and separate use of West's intended wife, during her life, with remainders over, certain specified property, among which were certain promissory notes, (for which the note sued on was substituted) and certain perishable and household furniture.

The Court charged the Jury, that the alteration of the note was an immaterial one, and did not affect its validity; and that an estate in remainder, could not be created in promissory notes, and that by said deed, the trustees took no interest in the notes, and that the title remained in West and his wife.

To which charge and direction of the Court, defendant also excepted, and on all these grounds, filed his bill of exceptions, and brings up this case.

B. H. HILL and STOKES, for plaintiff in error, cited—

*Chitty on Bills*, 181, '2.   *Breese's Rep.* 301.   1 *Denio*, 120. 1 *Devereux*, 115.   *Hill on Trustees*, 44.   10 *John. R.* 12.   2 *Kent*, 352.

INGRAM, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The release of the surety, and cutting his name off this note, does not invalidate it. A great deal of the doctrine of the English books, relative to the alteration of bills and notes, arises out of the policy of the Stamp Acts of Great Britain. Those Acts are not of force in this State. The policy of the English Stamp Acts, is revenue. The more contracts of this sort, the more duty; hence the rigidity of the rules as to alterations. Alterations require new contracts, and new contracts bring larger revenues. But aside from these Acts, the rules upon this subject are very strict. Upon principle, they ought to be so. Parties ought to be held to abide their contracts, as they make them. The written contract is the evidence of what are the rights, and what the obligations of all who are parties to it. If one or more of the parties,

VOL. VIII.   32

or a stranger, could alter or vary it in one particular, without the consent of other parties, why not in all particulars? And if it were in the power of one or more to alter bills or notes, without the consent of others, then the bills and notes would be no evidence of contracts. Commercial policy requires that negotiable securities should remain just what they are when issued. The principle involved is, that the contract remain the same, in order that the rights of the parties remain the same. The law is careful to permit no temptation to fraud. It, therefore, will not permit a party to make alterations in a bill or note, without subjecting him to loss. Immunity would be a temptation to fraud. Any alteration, therefore, which will affect the contract, so as to affect rights under it, will make it void. According to this rule, I do not see how the cutting off the name and release of *the surety*, with the consent of the payee, before the note passes out of his hands —whilst he is sole owner—can invalidate the note. The payee can, if he will, release the liability of any party. He does it, of course, at his peril. He having done so, he has no right to complain; and if such release does not affect the rights of other parties, they cannot complain. In this case, the parties to the note are the maker and his sureties, being joint and several promisors, and the payee. There is no contract between the principal and surety, which is affected by a release of the surety. The principal is bound at all events, whether the name of the surety is taken off or not. The note, with the surety's name on it, is joint and several, upon which, both are together liable to suit, or each, singly. With the surety's name taken off, the principal stands liable, as before. He had no rights, as against his surety, whilst his name was on the paper, any more than he now has, and his contract with the payee remains precisely the same. Upon principle, there seems to be no reason for holding that this alteration affects this note; nor does it, upon authority. The rule is, "that if a bill or note be altered, without the consent of the parties, *in any material part*, it will be void as to all parties not consenting to the alteration, even in the hands of an innocent holder—as, in the date, sum, time when payable, or consideration. Nor does it matter by whom made; the alteration is fatal, whether made by a party or a stranger—whether innocently or fraudulently." Any thing will *be material*, I take it, which varies the rights and obligations of the parties in the minutest particular. In what particular the

obliterating the name of the surety affects the principal, I cannot see. He, in this case, is the only party to be affected. It is not an alteration of the note in a *material part.* *Chitty on Bills,* 181, 182, 183, *and notes.* *Bayley on Bills,* 90 *to* 96, *and notes.*

[2.] The presiding Judge held, that an estate in remainder could not be created in promissory notes, and upon that holding, error is assigned. This Court has held differently. A treatise might be written upon this question, with propriety. The origin, progress and present condition of it, are fruitful themes for the display of judicial learning. Of this, I am neither ambitious nor capable.

Without putting a construction upon this marriage settlement, (for that is not made necessary by this record) I shall content myself with transcribing what this Court has said, through my brother LUMPKIN, in *Kirkpatrick vs. Davidson,* (2 *Kelly,* 301.) "Anciently, there could be no limitation over of a chattel, but a gift for life carried the absolute interest. Then a distinction was taken between *the use* and the *property,* and it was held, that the *use* might be given to one for life, and the property afterwards to another, though the devise over of the chattel itself would be void. It was finally, however, settled, that there was nothing in that distinction, and that a gift for life of a chattel, was a gift of the use only, and the remainder over was good as an executory devise. And the general rule, as now established by numerous decisions, is, that if a man, either by *deed* or *will,* limit his chattels to A for life, with remainder over to B, the remainder is good." If it were conceded that such remainder is bad, directly by deed, yet, there would then be no doubt of its being good, when settled by deed of trust. *Gilb. on Uses and Trusts, by Sugden,* 121, *note* 4. *Hargroves, note* 5 *to Coke Litt.* 20, *a.* And this doctrine extends to choses in action, as well as other chattels. 1 *Cruise's Dig. tit.* 12, *ch.* 1. *Hobson vs. Trevor,* 2 *P. Williams,* 191. *Wright vs. Wright,* 1 *Vesey, Sr.* 411. *Hill on Trustees,* 44. *Foley vs. Burnell,* 1 *Bro. C. C.* 274. *Hastings vs. Douglass, Cro. Car.* 343. 10 *Johns. R.* 12. 2 *Serg. & Rawle,* 59. 1 *Burrow,* 284. 1 *Bailey's S. C. R.* 100. 2 *Kent,* 352. 2 *Black.* 398. 13 *Conn.* 42. *Cro. J.* 59. 1 *Dana's K. R.* 237. 2 *Vern. R.* 59. 5 *Johns. C. R.* 334. 2 *Day. R.* 28. *Ib.* 52. 2 *Munf.* 479. 4 *McCord,* 427. 2 *Hill, S. C.* 443.

Let the judgment be reversed, on the last assignment.