[No. 15732.   In Bank.—August 6, 1895.]

## ESTATE OF C. C. GARRITY, DECEASED.   ELIZABETH BUCKLEY, APPELLANT.

ESTATES OF DECEASED PERSONS — FAMILY ALLOWANCE — HOMESTEAD — JURISDICTION.—The right of the family to an allowance for its support is not dependent nor contingent upon a previous order setting apart a homestead for the use of the family, and section 1466 of the Code of Civil Procedure confers upon the court the power, in its discretion, to make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family during the progress of the settlement of the estate, and its jurisdiction is not affected by the fact that the inventory shows that there was property of the estate out of which a homestead might be set apart to the widow.

ID.—PETITION BY EXECUTOR FOR FAMILY ALLOWANCE—RELATIONSHIP TO WIDOW.—It is not requisite that the widow should herself petition for a family allowance; but the order may be made upon a petition by any one in her behalf, and the fact that the executor is also her son should not prevent a petition made by him in her behalf from receiving consideration by the court.

ID.—FINAL ACCOUNT OF EXECUTOR — DISPOSITION OF PROPERTY UNAPPRAISED—EVIDENCE OF VALUE—APPRAISEMENT.—Where an executor has disposed of property, which was not included in the appraisement of the estate, the court is authorized to take evidence of its value for the purpose of ascertaining the amount with which the executor should be charged, and is not required to appoint an appraiser for that purpose.

ID.—DISTRIBUTION—LIFE ESTATE IN PERSONAL PROPERTY—SECURITY—INTENTION OF TESTATOR.—Where the will of a testator discloses his intention that his widow shall have the full enjoyment during her lifetime of personal property bequeathed to her, without being required to give any security for its preservation, she is entitled to have the possession of the personal property in which she is given a life estate distributed directly to her, to be held during the term of her life.

ID.—PROBATE JURISDICTION—CONVERSION OF PROPERTY FOR INVESTMENT—SECURITY.—The superior court is not authorized in the exercise of its probate jurisdiction to direct a conversion of the testator's property into

securities to be invested so as to allow only the income thereof to a life tenant, nor to require the life tenant to give any security before receiving the legacy.

ID.—EQUITY JURISDICTION—IMPAIRMENT OF ESTATE BY LIFE TENANT.— Where the legatees in remainder make it appear that there is danger that the estate will be impaired or suffer waste if left in the possession of the life tenant without security, and it is necessary that their rights in the property shall be protected or preserved, they must seek relief from the equity arm of the superior court in order to demand that security be given.

ID.—POWER OF TESTATOR—APPOINTMENT OF LIFE TENANT AS TRUSTEE.— The testator has the right to make the life tenant trustee of the property bequeathed without requiring any security from him; and very slight indications in the will will be construed as showing that the testator intended the life tenant, rather than the executor, to be the trustee, subject to the general rules applicable to the obligations of a trustee to his *cestui que trust.*

ID.—CONSTRUCTION OF WILL—INTENTION OF TESTATOR—DEVISE OF RESIDUE—RIGHTS OF WIDOW AS LIFE TENANT.—Where by the terms of the will the testator bequeathed to his widow for the term of her natural life all of his property of every character and description, and gave to the children the rest, residue, and remainder of the estate and property remaining after the termination of the life estate, without giving to them the same property and estate by way of remainder, the will must be construed as showing the intention of the testator that his widow should have the possession of the property bequeathed to her during life, without being required to give any security for its preservation, and that it was within his contemplation that some of the property received by her might not be in existence at her death to be received by the children.

ID.—DECREE OF DISTRIBUTION—PROVISO—MODIFICATION UPON APPEAL.— A decree of distribution is intended to be a final distribution of the estate, and should not be made contingent upon the establishment at some future time of the existence of conditions inserted in a proviso, and upon appeal such decree will be directed to be modified by striking therefrom such proviso.

APPEAL from a decree of distribution of the Superior Court of Contra Costa County and from orders for a family allowance and settling the final account of the executor. JOSEPH P. JONES, Judge.

The facts are stated in the opinion of the court.

*Reddy, Campbell & Metson,* for Appellant.

The court had no jurisdiction to make the family allowance, it not appearing that the homestead had been set apart and was insufficient for the support of

the widow.   (Code Civ. Proc., secs. 1465, 1466; *Estate of* *Lux*, 100 Cal. 603.)   The widow is not entitled to the possession of the entire fund as life tenant, but it must. be invested for the benefit of the remaindermen.   (*Howe* v. *Earl of Dartmouth*, 7 Ves. 137; *Livingston* v. *Murray*, 68 N. Y. 485, 492; *Howard* v. *Howard*, 16 N. J. Eq. 486; *Covenhoven* v. *Shuler*, 2 Paige, 132; 21 Am. Dec. 73; *Healey* v. *Toppan*, 45 N. H. 243, 260; 86 Am. Dec. 159; *Security Co.* v. *Hardenburgh*, 53 Conn. 169.)

*John B. Mhoon*, for Executor, Respondent.

The court had jurisdiction to make an order for family allowance on the petition of any one, or of its own motion.   (Code Civ. Proc., secs. 1464–66.)   The rule in Lord Dartmouth's case has been abrogated by the modern decisions.   (1 Story's Equity, sec. 604; 2 Redfield on Wills, sec. 153; *Thursby* v. *Thursby*, L. R. 19 Eq. 395.)   The widow cannot in this proceeding be deprived of her right to have, to hold, and to enjoy the life estate, nor will appellant's rights in what remains upon the determination of the life estate be destroyed or endangered by any acts of the life tenant.   ·(*Rowe* v. *White*, 16 N. J. Eq. 411; 84 Am. Dec. 169; *Goudie* v. *Johnston*, 109 Ind. 427; *Harbison* v. *James*, 90 Mo. 411; *Anderson* v. *Hall*, 80 Ky. 91; *Howard* v. *Carusi*, 109 U. S. 725; *Smith* v. *Bell*, 6 Pet. 68; *Healey* v. *Toppan*, 45 N. H. 243; 86 Am. Dec. 159.)   The widow did not waive her right to succeed to half the community property by taking her bequest under the will.   (*Estate of Silvey*, 42 Cal. 210; *King* v. *Lagrange*, 50 Cal. 328.)

The Court.—After a full consideration of this cause in Bank we are satisfied with the conclusion reached in Department, and with the opinion of Mr. Justice Harrison therein delivered.·  In accordance with said opinion the superior court is directed to modify the decree of distribution by striking therefrom the following proviso: "Provided that the sum of one hundred dollars of said distribution shall have been heretofore re-

ceived by Thomas Garrity, and that the sum of fifteen dollars has been received by James Garrity"; and, as so modified, the decree is affirmed. The orders for a family allowance and settling the account are also affirmed; and the costs of this appeal are to be borne by appellant.

The following is the opinion of Mr. Justice Harrison above referred to, which was rendered in Department One, December 14, 1894:

HARRISON, J.—C. C. Garrity died testate June 4, 1890. His will was admitted to probate in the superior court of Contra Costa county, and letters testamentary thereon issued to James Garrity, November 24, 1890; and on January 7, 1891, the executor filed an inventory of the estate, which was appraised at $24,681.36. By his will the testator made certain legacies amounting to $2,500, and gave to his wife "all and singular my property, real, personal, and mixed, of every kind and character, wheresoever situated, to have, to hold, and to enjoy for the term of her natural life only, and not otherwise"; and in a subsequent item gave to three of his children, of whom the appellant is one, "all and singular, the rest, residue, and remainder of my estate and property, real, personal, and mixed, of every kind and character, and wheresoever situated, remaining upon the termination of the life estate hereinbefore granted and bequeathed to my said wife." The entire estate was community property, and, after paying the debts and expenses of administration, there remained in the hands of the executor certain real estate, which was appraised in the inventory at $13,040; certain personal property, consisting chiefly of farming implements, appraised at $188; and the sum of $8,068.74 in money, which was on deposit in the bank at the testator's death. January 23, 1892, the executor filed a supplemental inventory, setting forth that he had received from the testator two watches and a gold chain, and had disposed of them in accordance with certain instruc-

tions of the testator, given prior to his decease. November 17, 1892, a petition for a family allowance to the widow was filed on her behalf by the executor, which was contested by the appellant; and, after a hearing thereon, the court made an order allowing the sum of $50 per month, amounting to $1,500. This allowance was paid by the executor, and allowed to him in the settlement of his final account. December 3, 1892, the court made a decree of distribution, by which it distributed one-half of the real estate to the widow in fee as the survivor of the community, and the other undivided one-half to her for the term of her natural life, and, after directing the payment of the legacies out of the money in the hands of the executor, distributed to her in her own right, as the survivor of the community, one-half of the balance of said money, and one-half of the other articles of personalty; and the other half of said articles and the remaining sum of money, viz., $1,834.37, were distributed to her, to hold and enjoy during her life, and at her death to the three children. From the orders making the family allowance, settling the final account, and from the decree of distribution, Elizabeth Buckley has appealed.

1. It is claimed by the appellant that the court could not make an order for a family allowance to the widow, under section 1466 of the Code of Civil Procedure, unless there had been previously set apart to her the property authorized by section 1465, and it had been determined that the property thus set apart was insufficient for her support; that, as the inventory showed there was property of the estate out of which a homestead might have been set apart to the widow, and, as no application had been made therefor, the court had no jurisdiction to make the order of family allowance. The right of a family to an allowance for its support is not, however, contingent upon a previous order setting apart a homestead for its use. Whether a homestead be set apart or not, section 1466 confers upon the court the power, in its discretion, to "make such reasonable allowance out of

the estate as shall be necessary for the maintenance of the family according to their circumstances during the progress of the settlement of the estate." The circumstances and condition of the family, as well as those of the estate, may be such that the court would more wisely exercise its discretion in making a pecuniary allowance for the support of a family out of the estate than in setting apart to it a homestead; and, if the widow is content with such allowance without having a homestead set apart to her, it would seem that the other heirs ought not to complain. A homestead is primarily the place of abode for the family, and it might be that although, if one were set apart, they would thus be furnished with an abiding place, they would not receive a sufficient income for their support, and the expense of maintaining the homestead would be disproportionate to their necessities; while, on the other hand, the widow might be better cared for by receiving an allowance sufficient for her support, and residing elsewhere than upon a portion of the property of the estate. It was not requisite that the widow should herself petition for the allowance. The order could be made upon a petition by any one in her behalf, and the fact that the executor was also her son should not prevent a petition made by him on her behalf from receiving the same consideration by the court as though he had not held that office. The allowance to the executor in the settlement of his account of the amount which he had been directed to pay to the widow as a family allowance is not objected to, except as the allowance itself was objected to. As that allowance is sustained, the credit to the executor of the amount paid under the order was properly allowed by the court.

2. At the hearing, upon the settlement of the final account, the appellant made the objection that the watches and chain mentioned in the supplemental inventory were not accounted for in said account, and thereupon evidence of their value was taken by the court. It is recited in the bill of exceptions that, after

hearing this evidence, the court rendered its decision, "charging the executor with $50 as the value of said watches and chain, to which decision contestant then and there excepted." No exception was taken to this decision upon the ground that the value was not correctly found by the court, nor is it urged here that the court erred in this respect; but it is claimed that the watches should have been appraised as other property, and that the court could not, without such appraisement, determine their value. The record is not very clear as to the action of the court in this matter, but we think it sufficiently appears therefrom that the court charged the executor with $115, as the value of these watches and chain. The account, as rendered by him, shows the sum of $10,053.74 in his hands; and, in its order settling the account, the court charges him with $10,168.74 in his hands at the date of the filing; and, in connection with the finding of the court that, since the rendition of said account, nothing has been received by the executor, it must be held that $115, the difference between these two sums, is the amount for which the executor was charged as the value of the watches and chain. There was evidence before the court from which it could have found their value; and, in the absence of any assignment of error in this respect, its conclusion must be accepted as correct, whether it be assumed to be $50, as recited in the bill of exceptions, or $115, as appears from a comparison of its order of settlement with the account as rendered. As the executor had disposed of the watches, the court was authorized to take evidence of their value for the purpose of ascertaining the amount with which he should be charged, and was not required to appoint appraisers for that purpose.

3. It is contended by the appellant that the widow was not entitled to the possession of the personal property, in which she was given only a life estate, but that the superior court, instead of distributing the property directly to her during the term of her life, should have

directed that it be converted into money, and invested
in some securities from which she should be entitled to
receive only the income thereof during her lifetime,
and, at her death, the securities should be delivered to
the children. In England, and in some jurisdictions
within the United States, the administration of an
estate is regarded as a continuing trust, and the execu-
tor as a trustee for all the parties interested in the
estate, for the purpose of carrying into effect the various
provisions of the will; and in these jurisdictions the
rule prevails that when personal property, consisting of
money or securities, is given to one for life, with a re-
mainder to another, the executor, as a trustee for both,
shall convert the property into interest bearing securi-
ties, and pay the income thereof to the legatee for life,
and, after his death, deliver the securities to the re-
mainderman. (*Howe* v. *Earl of Dartmouth*, 7 Ves. 137;
*Howard* v. *Howard*, 16 N. J. Eq. 486; *Covenhoven* v. *Shuler*,
2 Paige, 132; 21 Am. Dec. 73.) At an early day in Eng-
land it was the rule in chancery that the life tenant,
before he could demand the delivery to him of property
bequeathed to him for life, should give security to the
executor; but as early as the time of Lord Talbot, in
1734, this rule had been modified to such an extent as
to require the life tenant merely to deliver to the re-
mainderman an inventory that the property was held
by him for life only. (*Slanning* v. *Style*, 3 P. Wms.
336. See, also, *Foley* v. *Burnell*, 1 Brown Ch. 279;
*Westcott* v. *Cady*, 5 Johns. Ch. 349; 9 Am. Dec. 306.)
This rule has been made applicable in this state only
to a bequest for life of specific legacies. (Civ. Code,
sec. 1365.) If the will is silent concerning the dispo-
sition of the corpus of the legacy during the continu-
ance of the life estate, the general rule in equity is
that the legatee for life is not entitled to demand from
the executor the possession of the legacy, unless he
gives security to the executor, and that the remainder-
man may require that the tenant for life, before receiv-
ing the property bequeathed to him, shall give such

security; but, in order that the remainderman may demand that such security be given, he must make it appear that there is some danger that the estate will be impaired or suffer waste if left in the possession of the life tenant. (*In re Camp*, 126 N. Y. 377; Story's Equity Jurisprudence, sec. 604; *Langworthy* v. *Chadwick*, 13 Conn. 42.) The rule is one of equity, established by courts for the protection of the remainderman, in the absence of any direction in the will; but the rule thus established must yield to the terms of the will, and if it appears from a proper construction of the will that it was the intention of the testator that the property should be placed in possession of the life tenant without security, such intention will be carried out. It is to be assumed that the testator intended the life tenant to have the full enjoyment during his lifetime of the property bequeathed to him, and that this enjoyment shall not be impaired, except for the protection of the remainderman. The testator has the right to make the life tenant the trustee of the property bequeathed, without requiring any security from him; and very slight indications in the will will be construed as showing that the testator intended the life tenant, rather than the executor, to be the trustee, subject, of course, to the general rules applicable to the obligations of a trustee to his *cestui que trust*. If the testator has not required such security to be given by the life tenant, courts are not authorized to require it, in the absence of any showing of danger or liability of waste; otherwise, the will of the testator that the life tenant shall enjoy the property will be frustrated. There is nothing, however, in the rules of procedure in this state, or in the will under consideration, which authorized such a procedure in the distribution of an estate. The administration of an estate in this state is conducted under the direction of the superior court, mainly for the purpose of securing to the creditors payment of their claims, and, after this purpose has been accomplished, in the absence of any express provisions in the will, the estate is to be distributed to the beneficiaries

under the will in accordance with its terms, and the executor is entitled to be discharged from any further duties. The provisions of the will become merged in the decree of distribution, and the terms of this decree become the measure of the rights of the several beneficiaries. Sitting as a court in probate, the function of the superior court is limited to a judicial determination that the estate of the testator is to be transferred to the beneficiaries as the testator has provided in his will; and the court is not authorized to add to its terms or qualify those provisions. There is no provision in our statutes authorizing the court to direct a conversion of the testator's property, or requiring the legatee for life to give any security before receiving his legacy. If the legatees in remainder deem it necessary that their rights in the property shall be protected or preserved, they must seek such relief from the equity arm of the superior court.

A consideration of the terms of the will before the court leads to the conclusion that it was the intention of the testator that his widow should have the possession of the property bequeathed to her without being required to give any security for its preservation. If he had intended that, upon the death of his widow, his children should receive the entire estate given to her, or that she should receive only the income thereof, it is reasonable to suppose that he would not have qualified the character of the estate which he gave to them; but the language used by him in the bequest to them indicates that such was not his intention. After giving to her for the term of her natural life " all " of his property, of every character, he gives to the three designated children the rest, residue, and remainder of his estate and property remaining upon the termination of the life estate granted to the widow. Instead of giving to them the same property and estate by way of remainder, after the termination of the life estate, he expressly limits the property given to them to the "rest, residue, and

remainder " thereof, that may be " remaining" after the
termination of the life estate.　These terms imply that
there was a distinction in his mind between the prop-
erty given by him to his widow and that which the chil-
dren would receive at her death, and his use of the word
" residue" shows that it was within his contemplation
that some of the property received by her might not be
in existence at her death to be received by the children.
Some effect must be given to these words, and they
receive their natural construction by holding that it
was his intention that the possession of the property
should be delivered to her at the distribution of his es-
tate.　This construction also consists with the terms in
which the estate was given to her.　He had given the
property to her " to have, to hold, and to enjoy for the
term of her natural life"; and, in the absence of any
limiting clause, the use of these words would imply a
right to the possession of the property in order that she
might " enjoy" it.　In *Flanagan* v. *Flanagan*, 8 Abb.
N. C. 413, the testator, after giving to his widow the
use of certain property during her life, disposed of
" the portion left " of said property, and it was held
that the words " the portion left " implied a right to
the possession, and even the disposition, of the prop-
erty.　In *Markley's Estate*, 132 Pa. St. 352, the testa-
tor gave a life estate in all his property to his widow,
and directed that, at her death, the "residue" should
go to his children; and the action of the executor in
delivering the property to the widow without any se-
curity was sustained by the court.　In *Downing* v. *John-
son*, 5 Cold. 229, it was held that, under a provision in
the will giving a life estate to the widow, she was enti-
tled to its possession, and that the testator's disposition
of " the balance of my property which may be on hand
at the death of my wife " implied a right in the widow
to consume the property given to her.　In *Warren* v.
*Webb*, 68 Me. 133, the testator gave a life estate in all
his property to his widow, " and after her decease said

estate and property, or the residue and remainder thereof, to be legally divided to and among my children." It was held that the widow was entitled to the possession of the estate, and that the language used in the will implied that it might be diminished while in her hands. (See, also, *In re Woods*, 35 Hun, 60; *Champion* v. *Williams*, 12 N. Y. Supp. 697; *Smith* v. *Van Ostrand*, 64 N. Y. 278; *Sutphen* v. *Ellis*, 35 Mich. 446; *Houser* v. *Ruffner*, 18 W. Va. 244; *Burleigh* v. *Clough*, 52 N. H. 267; 13 Am. Rep. 23; *Starr* v. *McEwan*, 69 Me. 334.) The appellant did not make any showing before the superior court that there was any danger of loss if the property should be delivered to the widow, nor did she present to that court any reason why the property should not be so delivered; but has appealed directly from the decree of distribution, upon the theory that it is the invariable duty of the court to cause the property to be converted, and direct that the life tenant shall receive the income only.

4. In the decree of distribution the court added to the clause distributing the personal estate to the widow the following: " Provided that the sum of one hundred dollars of said distribution shall have been heretofore received by Thomas Garrity, and that the sum of fifteen dollars has been received by James Garrity." No reason is assigned for inserting this condition in the decree of distribution, and we are of the opinion that it should not be included therein. The decree of distribution is intended to be a final disposition of the estate, and not contingent upon the establishment at some future time of the existence of such condition. If, as is suggested by the respondent, the money thus referred to represents the value of the watches, as his executor was charged for that value in his account, there would be no occasion for inserting this proviso. The executor has not, however, appealed from the decree, and the rights of the appellant are not affected by this clause.