IN THE MATTER OF THE ESTATE OF ANDREW NELSON, DECEASED.

[No. 24,184; decided June 9, 1903.]

Will.—In the Interpretation of a Will No Recourse to Technical Rules is necessary or permissible, if the intention of the testator clearly appears from the provisions of the instrument.

Will—Life Estate—Power of Disposition.—Where a will gives an estate for life to the widow, with remainder over, a power of disposition given her by another clause in the will does not enlarge her estate into a fee and destroy the rights of the remaindermen.

Campbell, Metson & Campbell and J. C. Campbell, for the petitioner.

Bishop, Wheeler & Hoefler and Charles S. Wheeler, for certain devisees.

COFFEY, J.   Andrew Nelson died in San Francisco on January 1, 1901, leaving a will which was admitted to probate on January 23, 1901, and the executrix named therein

was on that date appointed and immediately qualified and entered upon the discharge of her duties. All the obligations of her office having been fulfilled and the administration of the estate brought to the point of final settlement and distribution, the executrix prays that the property may be distributed to those entitled thereto; claiming, however, that a certain clause in the will is void and that she is entitled to the entire estate.

The clause sought to be invalidated is the one marked "Thirdly," concerning which the petitioner avers that she is advised and believes that the limitation over in favor of Johan Nelson, John Leale, and the nephews and nieces of testator, is void, and that she is entitled to have distributed to herself, absolutely and without condition, limitation, or reservation, the whole of the estate of said decedent.

The application of the widow executrix is opposed by Johan Nelson and the nephews and nieces of testator on the ground that said limitation is in law and estate for life to the widow with remainder to them.

It is contended on behalf of the widow that under and by the terms of the will she takes an absolute fee, and that the subsequent attempt at limitation is repugnant and void, because she is the first taker with an absolute right to dispose of the property in her own unlimited discretion, and therefore any estate over is invalid as being inconsistent with the first devise, which was coupled with full power to dispose of the life estate so conferred in every way, except that she is not affirmatively empowered to deal with it testamentarily; the power of sale is affirmative and absolute, and it is not restricted to a certain event or for a specific purpose. It is claimed for the widow that the authorities sustain the proposition that where an absolute power of disposal is given to the first devisee, a remainder is void for repugnancy. Such full dominion in the devisee or legatee is said to be inconsistent with and destructive of all other rights; and this principle of the common law, it is asserted, comports with the Civil Code section which treats of the subject matter. In a case where the question was whether the testator's widow might convey in fee simple a portion of his real estate, the court entertained no doubt of her power to do so,

because the gift was of a life estate, with a full power of disposition, both by deed and will, over the entire property, at the pleasure of the devisee, without limitation or restriction as to the time, mode or purposes of the execution of the power. In such a case, the courts and authorities seem to hold that the life estate and unlimited power of disposition over the remainder coalesce and form an estate in fee, and that the devise over is void because inconsistent with the unrestricted power vested in the first taker. This was the doctrine announced in Hale v. Marsh, 100 Mass. 468, which cites numerous cases in support of that principle, including Ramsdell v. Ramsdell, 21 Me. 288, in which the court said that the rule to be extracted from these cases would seem to be that where a life estate only is clearly given to the first taker, with an express power on a certain event or for a certain purpose to dispose of the property, the life estate is not by such power enlarged to a fee or absolute right, and the devise over will be good. It is contended, however, by the executrix that this statement in the Ramsdell case is an exception to the general rule and does not apply to the Nelson will, in which the power of sale is absolute, and not restricted to a certain event or for a certain purpose.

On the other hand, it is maintained that the rules relied upon by the widow have been modified by the statutes of this state, and that consequently the cases cited have no binding force wherever the code system prevails. For this contention dependence is placed upon sections 697 and 740 of the Civil Code, the first of which declares that a future interest is not void merely because of the improbability of the contingency on which it is limited to take effect, and the second provides that a future interest may be defeated in any manner or by any act or means which the party creating such interest authorized in the creation thereof; and no future interest thus liable to be defeated shall be on that ground adjudged void in its creation. As to a case cited by the widow—Estate of Inwood, No. 24,925, in this department—respondents assert that it is not a precedent, as it was not well considered, and is not to be taken as an authority, and is directly in the teeth of adjudicated cases under the code; it may have been correct at common law, but not un-

der the sections cited of our Civil Code; and it is insisted that the law of California and of New York to-day is in derogation of the common law.

The retort to this insistence is, that the common law has not been altered in relation to these matters, and that the rules already stated in behalf of the widow have been crystallized in the code. Here is a sharp divergence of opinion, which renders necessary some examination of the subjects to resolve the question aright. In this pursuit we are referred to an interesting opinion expository of the common law reported in 55 Maryland, the matter germane to this point being found on page 310 (Foos v. Scarf), in which allusion is made to a former decision, Benesch v. Clark, 49 Md. 497, where the courts say they decided, in accordance with all the authorities, that when an estate is given to a person generally or indefinitely with power of disposition, such gift carries the entire estate, and the devisee or legatee takes not a simple power, but the property absolutely; but where the property is given to a person expressly for life, and there be annexed to such gift a power of disposition of the reversion, the rule is different; and in such case the first taker takes but an estate for life, with the power annexed; and if the person so taking fails to execute the power, the property goes, where there is no gift over, to the heir or next of kin of the testator, according to the nature of the property. Such is the rule as laid down by Chancellor Kent in Jackson v. Robins, 16 Johns. 588, which is more compactly presented in Preston on Estates, in these words: "Grant that an express estate is limited, and a power of disposition either generally or in favor of particular persons is added; the person to whom the devise is made will have merely the estate limited by express word and the right in point of power and not of estate of disposing of the remainder." As an instance of the application of the rule, Preston cites as good law a case of a devise to one for life to dispose at his will and pleasure, which gives an estate for life only, for the words superadded to the limitation express merely an intention to authorize a power of alienation during that period for which an estate is devised in terms. It has been said that the distinction is perhaps slight between a gift for life, with a power of disposition

superadded and a gift to a person indefinitely, with a superadded power to dispose by deed or will, but that distinction is perfectly established, and has been recognized and adopted in many cases sustaining the rule approved by Chancellor Kent cited in the Maryland report.

Notwithstanding the confident assurance of counsel on either side, it will be seen that there is some dissonance in the decisions, and the summing up of the text-books by no means tends to restore harmony. In Page on Wills, a much commended treatise, it is said that if testator devise an estate, which is clearly a life estate, and adds to such devise limited powers of disposition and alienation, the authorities are nearly unanimous in holding that such a power of disposition does not enlarge the life estate into a fee, but that the estate created is exactly what it purports to be—that is to say, a life estate with power under certain conditions and in certain methods to dispose of the fee; but where the testator devises land for life and confers upon the life tenant an absolute and unlimited power of disposition of the property thus devised, there is a very serious conflict of authority, caused in part by peculiarities of statute law in some states, as to whether such a devise gives a life estate with power of disposition or a fee simple. Page concludes that the weight of authority upon this point is that such a devise gives only a life estate; and it would seem that the result of this investigation is, that an absolute power of disposition does not necessarily enlarge the life estate to a fee.

Woerner says that powers so conferred are to be executed, like all testamentary dispositions, according to the testator's intention; if that be clearly apparent, there need be no recourse to rules of construction; but the coupling of the power with the gift of a life estate requires peculiar caution in ascertaining such intention, so that the rights of the respective parties in interest, as well as of possible purchasers under the power, may not be prejudiced.

The supreme court of California in the Morffew Case, 107 Cal. 587, 40 Pac. 810, decided that where there is no trust for the purpose of sale, and the power of sale is by the terms of the will discretionary, a life estate vested in the trustee individually is not enlarged to a fee by the power of sale, and

such power is a mere naked power to sell not coupled with any interest in the fee. Commissioner Britt, in his opinion, says that as the will did not impose upon the widow any other duty which required for its discharge an estate in the land greater than for her life, so there was no enlargement of her life estate to be implied from the necessities of the trust; and the life estate in the trustee being created by express words in the will, with limitation over, it is not enlarged to a fee by the power of sale. Among the authorities cited by the commissioner in support of this proposition is the case of Hatfield v. Sohier, 114 Mass. 48, which says that an express devise of an estate for life is not to be enlarged to an estate of inheritance by the subsequent provisions unless they clearly show the intention of the testator to be so. In that case it was held that the power to dispose of the property by will or by deed during her life is not inconsistent with a life estate.

We must now consider the terms of the will in the case at bar, and especially the controverted causes, to ascertain the character of the estate devised to the wife, and to execute the intention of the testator so far as it may be discovered by an examination of the entire instrument.

The will, after the usual invocation, describes in the first person the testator Andrew Nelson, an old resident of San Francisco, aged seventy-two years, of sound mind, and otherwise competent, who certifies in the first paragraph that he is a married man, and that his wife's name is Elizabeth Nelson, now living with him at 706 O'Farrell street, and that he has no child.

Secondly, he declares that all the property he possesses is community property, having been acquired by him subsequent to his marriage, and therefore he has the testamentary disposition over the one-half thereof only, the other half belonging to his wife, the said Elizabeth.

Thirdly, he bequeaths and devises to his wife all the property, real and personal, over which he has testamentary disposition, to hold during the term of her natural life, and upon her death to his brother, Johan Nelson of Boda, Sweden, John Leale, his wife's nephew, and his own nephews and nieces, share and share alike, subject, however, to the provi-

sions that if his brother Johan should predecease him, then his portion should go to his widow; and, also, that if any of his devisees or legatees at the time of his own death, or at the termination of his wife's life estate, or at any time between the two events, should be engaged in the liquor business, the share of such person should lapse and be divided among the other legatees and devisees. This proposition he inserted because of his antipathy to the traffic in alcohol.

Fourthly, he nominated his wife executrix, to act without bonds, for any purpose whatever during the course of administration.

Fifthly, he gave to his executrix full power and authority to sell, mortgage, hypothecate and lease any or all of the property of his estate without order of court.

Sixthly, he requests that when the time during which creditors can present claims has expired, his entire estate shall be distributed to his wife immediately, individually, and in trust for herself and his devisees and legatees, and that no bond be required of her for that or any other purpose.

Seventhly, he gives to his wife full power to manage, control, invest, sell, mortgage, hypothecate, lease and enter into such contracts as she may deem expedient in reference to the life estate given her by the will, especially directing that she shall not be held liable or responsible for any loss or bad investment that she may make; and he also requests and directs that she shall not be curtailed in the management thereof by any of the devisees or legatees.

Eighthly, he declares that if his wife should die first, he would probably execute another will, but if in that event he should not do so, he desires that her community half of the estate should go to her heirs.

Ninthly, he nominates his nephew, N. P. Nelson, and his wife's nephew, John Leale, without bonds, to take charge and manage the life estate given to his wife at the time of her death, if anyone is required to act, and he directs that they see that the property is correctly distributed among his devisees and legatees; and in case of his wife's death prior to his own decease, if he should not execute another will, he appoints the said N. P. Nelson and John Leale as executors of this will without bonds; and lastly, he revokes all former wills

by him made. Then followed finally the signature and formal attestation clause. The instrument was witnessed by two attorneys, William F. Gibson and Edwin T. Cooper, the former of whom is said to have been the draughtsman of the document. He is now deceased, but he was a long time practitioner in probate, and it is not too much to say of him that he was a skillful and conscientious lawyer, and that he discharged his duties in this particular with due regard to the law in which he was versed.

To discover the testamentary purpose is our first greeting. A will is to be construed according to the intention of the testator, and this intention must have effect as far as possible. If its provisions are clearly apparent, no recourse to technical rules is necessary nor permissible to establish its contents. This is code and common law. The difficulties of interpreting wills inartificially constructed by testators who undertake the task for themselves are many and great, justifying the remark of Lord Coke that such wills and their interpretation do more perplex a man than any other learning, and to reach certainty and conclusion as to their meaning often transcends the art of the jurisprudent. This instrument, however, is not of the sort that provoked Coke's censure; it is not one drawn lacking legal counsel, but bears intrinsic evidence that it was designed with great caution, forethought and competent professional advice; and its intention is not obscure for want of apt and adequate expression.

Andrew Nelson intended that his wife Elizabeth should have, first, what rightfully belonged to her as the survivor of the community; so he declared his domestic status and that of his property through his mode of acquisition. Then he undertook, in the third clause, to deal with that portion over which he had power of testamentary disposition, and in that moiety he created a life estate in his wife, with remainder over to his brother Johan, his wife's nephew, John Leale, and his own nephews and nieces, subject to certain provisions not necessary to repeat here. In the sixth clause he provides for the distribution of the estate in trust for herself and his devisees and legatees. In the seventh clause he gives the unrestricted management of the life estate; and then we come to the ninth or last of the controverted clauses, by which he

provides for the transference of the property upon the death of his wife, and appoints his nephew N. P. Nelson, and her nephew, John Leale, if anyone is required to act, to supervise the correct distribution among the devisees and legatees, and he also appoints those two persons alternate executors without bonds.

Nothing could be more perspicuous or persistent than the purpose of testator with respect to the devolution of the title to the fee.

Having ascertained his intention, are we to defeat the purpose of the testator by construction? The petitioner contends that the question is not so much what the law is, but whether the provisions of this instrument are within the well-settled principles of the law; and she claims the entire estate by virtue of the law as against the text and tenor of the testament, because the testator has given her a power, the exercise of which is inconsistent with his attempted disposition of the fee. She asserts in herself absolute power under the seventh clause, contending that authority to sell the life estate includes right to convey the fee; and asserting that the most natural construction of the language of the testator is that the power so given extends to a sale and conveyance of the remainder; thus incurring the defeasance of the title of the devisees which the ninth clause was designed to protect; but this contention of the executrix does not square with the simple and plain words of the will, which mention only the life estate, make no allusion to the remainder, and leave no room for implication. The testator did not intend that the first taker should have an absolute estate in fee, for her own use and benefit, of his disposable share of their common property; and no technical rule, assuming such to exist, should be allowed a controlling effect, when the testator, in clear terms, has made his meaning manifest and left no occasion for indulging in presumptions.

It is repeated, however, by the executrix that the expressions of the seventh clause imply an absolute power of disposition, and that, therefore, the remainder over is void for repugnancy; but it is not certain that, even at common law, this contention could be made good, for there are common-law cases that maintain that an absolute power of disposition must

include a right to dispose of an estate by will, and unless the authority conferred on the first taker were broad enough to include testamentary privilege, the limitation over would be valid. The seventh clause of this will communicates no power of testamentary disposition, and so far it falls short of absolute quality. Its essential feature is the unfettered management of the life estate of the widow, but the preservation of the remainder for the devisees and legatees is clearly contemplated and is constantly in the mind of the testator. While the widow is not to be molested in management, the remaindermen are to be protected in their expectancy. In such a case, the particular estate is not enlarged to a fee. In a case in New York, which seems in point, the court said that annexed to the gift was a power to sell or otherwise dispose of the property, if the devisee should require it or deem it expedient. In the case at bar, the donee is given full power to manage, mortgage, lease, sell and enter into such contracts, "as she may deem expedient in reference to the life estate given her by this will." The New York court held that this was an additional power of disposal, and did not operate to enlarge the estate. It held that power was to be exercised during the life and not at death, for an absolute power of disposal includes a power to dispose by will, as well as by sale or otherwise during life, which would be incompatible with the mere life estate; and such power is not given by the terms of this will: Terry v. Wiggins, 47 N. Y. 514.

On this subject at this time the laws of New York and of California are in unison, and whatever may have been the rule at common law the Civil Code must be the rule of decision in the case at bar. Our code sections on property in general are appropriated almost wholly from the New York statutes, which have received a construction by the courts of that state contrary to the contention of the petitioner here. In this case, it may be concluded that the testator confided the custody of the corpus of the estate to the widow for life, with power to sell and otherwise deal therewith as she might deem expedient during her lifetime, but not beyond, with valid remainder over to the persons indicated by name and description in the third clause of the will. The testator had the right to make the life tenant the trustee, subject to the

obligations established by the code and free from certain onerous conditions, such as the requirement of security for performance of trust. Such is the rule established by the supreme court in Estate of Garrity, 108 Cal. 463, 38 Pac. 628, 41 Pac. 485. It follows from the reasoning of this opinion that the petitioner is not entitled to the entire estate.

A Power of Sale Added to a Life Estate does not raise the estate to a fee: Mansfield v. Shelton, 67 Conn. 390, 52 Am. St. Rep. 285; Ducker v. Burnham, 146 Ill. 9, 37 Am. St. Rep. 135; Skinner v. McDowell, 169 Ill. 365, 61 Am. St. Rep. 183. Where, by the terms of a will, there has been an express limitation of the estate to the first taker for life and a limitation over, with general expressions apparently giving the tenant for life an unlimited power over the estate, but which do not in express terms do so, the power of disposal is only coextensive with the estate which the devisees take under the will, and means such a disposal as a tenant for life could make, unless there are words showing that a larger power is intended: Wardner v. Seventh Day etc. Board, 232 Ill. 606, 122 Am. St. Rep. 138.