B. F. CRARY, Appellant, v. STANDARD INVESTMENT COMPANY and FRED A. RICHARDSON.

Division Two, March 26, 1926.

1. **HOMESTEAD: Antecedent Debt: Change in Form.** A change in the form of the debt which must antedate the acquisition of the homestead in order to exclude exemption, makes no difference. The date of the notes, on which judgment was obtained, is the date to be considered in determining whether the homestead antedated the debt.

2. ————: **Foreign Judgment: Basis of Missouri Judgment: Collateral Attack.** A default judgment rendered in Missouri on a default Kansas judgment based on notes is conclusive upon the parties as to the matters litigated by it, and cannot be attacked collaterally, such as by a suit by the maker of the notes to set aside a sale and execution made under the Missouri judgment on the ground that the property conveyed by the sheriff's deed thereunder to the plaintiff therein was the maker's homestead.

3. ———: Domestic Judgment Based on Extinct Foreign Judgment: Dormant Cause of Action: Sale Under Domestic Judgment. Even if it be true, and could now be shown to be true, that the judgment obtained in Kansas, on notes executed by plaintiff before he acquired his homestead, was dormant and extinct when a default judgment based thereon was obtained in Missouri, that would not entitle plaintiff to have set aside the sheriff's deed made under execution of the Missouri judgment conveying property to defendant, and to have a homestead therein declared in plaintiff's favor; nor does the refinement that the attack is upon the "origin" of the cause of action which would subject the homestead to the payment of the debt, and not upon the validity of the Missouri judgment, render invalid the sale. The sale and conveyance were made under the Missouri judgment, and it cannot be ruled that the "cause of action" (mentioned in the homestead statute; Sec. 5860, R. S. 1919), on which the Missouri judgment was obtained, had no existence. The reason is that, while the parties to the two judgments were the same, the causes of action were not the same. The Missouri judgment, although by default, conclusively determined that the Kansas judgment was still existent, for otherwise it could not have been rendered, since its existence was the fundamental issue in the Missouri case; while the Kansas judgment was based on an entirely different cause of action, namely, the validity of the notes sued on.

4. JUDGMENT: Res Adjudicata: Different Causes. Where it is sought to apply the estoppel of a judgment rendered upon one cause of action to the matters arising in a suit upon a different cause of action, the inquiry must always be directed to the point or question actually litigated and determined in the former action. If the record of the former trial shows that the judgment could not have been rendered without deciding a particular matter, it will be considered as having settled that matter in all future actions between the parties. For instance, a Missouri judgment based on a Kansas judgment, which was for the amount of notes sued on, necessarily determined that the Kansas judgment was existent, and that the Missouri judgment was based on an existing cause of action; and whether the Kansas judgment was at the time dormant and extinct, is no longer an open question, and cannot be litigated in a collateral proceeding. The two judgments were based on different causes of action; and the real issue in the case out of which the Missouri judgment grew was whether the Kansas judgment was still existent, and the Missouri judgment necessarily determined that issue in the affirmative.

5. HOMESTEAD: Change of Residence: Abandonment. The removal of plaintiff to Kansas, the taking out of letters of administration upon

313 Mo. Sup.—29.

his sister's estate as a resident of that state, his securing of the appointment of an ancillary administrator upon her estate in this State, though the laws of this State gave him the right as next of kin to administer in Missouri. and the laws of Kansas required an adminstrator of an estate there to be a resident of that State, are sufficient evidence upon which to base a finding that he had abandoned his homestead in this State, if he ever had one here.

6. ————: Gift: Occupancy: Exemption: Record of Deed. The right to claim property exempt as a homestead from sale to pay debts does not exist until a deed to the homesteader is filed for record. The fact that plaintiff's sister orally gave him residence property which he and his family occupied as a home for three or four years did not exempt it from subsequent sale to pay notes which he executed before his sister conveyed the property to him. The statute definitely says that the date the deed is filed for record is the time when the homestead exemption attaches; and if debts are created by the homesteader prior to that date, the homestead is not exempt from sale to pay them.

Evidence, 22 C. J., Section 87, p. 155, n. 14; 23 C. J., Section 1950, p. 133, n. 30. Homesteads, 29 C. J., Section 84, p. 819, n. 20. Judgments, 34 C. J., Section 869, p. 567, n. 67; Section 1156, p. 745, n. 84, 85; Section 1236, p. 818, n. 92; Section 1322, p. 909, n. 31; Section 1328, p. 921, n. 74; Section 1550, p. 1094, n. 12 New; Section 1611, p. 1135, n. 30; p. 1136, n. 33, 34. Statutes, 36 Cyc., p. 1252, n. 94, 96.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner*, Judge.

AFFIRMED.

*Stubbs & Wolfe* for appellant.

(1) Homestead statutes are to be liberally construed to protect the homestead. The correct judicial attitude toward homestead laws is one of as great liberality in construction as their words and spirit permit. Balance v. Gordon, 247 Mo. 124; Pocoke v. Peterson, 256 Mo. 501; Keeline v. Sealey, 257 Mo. 498; Haggard v. Haggard, 233 S. W. 18. (2) Homestead statutes are not in contravention of the common law. Balance v. Gordon, 247 Mo. 124; Brewington v. Brewington, 211 Mo. 48; Sperry v. Cook, 247 Mo. 132. (3) A creditor, who through legal process lays his hands on a homestead, must justify his action by

carrying the burden of showing not only that he has a cause of action, but that such cause of action is superior to the homestead. The evidence shows indisputably that plaintiff has had a homestead in the premises since December 27, 1910, the date of filing for record his deed to the homestead. There is no dispute between the parties that the homestead dates back that far. In attempting to levy upon and sell this homestead, defendant takes the burden of showing: (a) that it has a valid cause of action; and (b) that such cause of action is superior to the homestead. Balance v. Gordon, 247 Mo. 127; Rogers v. Marsh, 73 Mo. 69; Anthony v. Rice, 110 Mo. 229; Kelsay v. Frazier, 78 Mo. 111. (4) Defendant has no valid cause of action to enforce against the homestead. Defendant obtained judgment against plaintiff in Kansas September 26, 1912, and on February 28, 1920, defendant brought suit against plaintiff upon said foreign judgment in Missouri, and thereafter recovered a judgment against plaintiff by default, which judgment was followed by execution and levy upon plaintiff's homestead. At the time plaintiff instituted suit in Missouri upon the Kansas judgment said Kansas judgment was dead, extinguished, and had ceased to be a judgment, and therefore no action could be based thereon. In Kansas the law is that a judgment becomes dormant or dead when an execution is not sued out thereon within five years from the date of the judgment. G. S. Kan. 1915, secs. 7346, 6914; Mawhinney v. Doane, 40 Kan. 676; Smalley v. Bowling, 64 Kan. 818. (5) The Kansas law operated to destroy the cause of action and after the Kansas judgment became dormant or dead it was incapable of supporting an action either in Kansas or in Missouri. This point has been ruled upon by the Supreme Court of Missouri and is not now open to question. Berkley v. Tootle, 163 Mo. 584; St. Louis Foundry Co. v. Jackson, 128 Mo. 119; Miller v. Connor, 177 Mo. App. 630. (6) Even if defendant had a cause of action to enforce it was not existing at the time the homestead was acquired, and so cannot be enforced

against the homestead. Sec. 5860, R. S. 1919; Sperry v. Cook, 247 Mo. 132; Tourville v. Wabash, 140 Mo. 623; Cooksey v. Railroad, 74 Mo. 477; Hawkins v. West, 167 Mo. App. 439; Chenault v. Yates, 216 S. W. 817; Bank v. Witmer, 171 Mo. App. 352; Cowgill v. Robberson, 75 Mo. App. 412; Stauffer v. Remick, 37 Kan. 454; Ashton v. Clayton, 27 Kan. 626; Price v. Bank, 64 Pac. 637; Winham v. Kline, 77 Mo. App. 36. (7) The homestead was not abandoned. Snodgrass v. Copple, 131 Mo. App. 346; Victor v. Crimmer, 118 Mo. App. 592; Pocoke v. Peterson, 256 Mo. 501; Keeline v. Sealy, 257 Mo. 498; First Nat. Bank v. Woelz, 197 Mo. App. 686.

*Dwight M. Smith* and *R. E. Ball* for respondents.

(1) Date of recording deed fixes time of acquiring homestead exemption rights with respect to "causes of action existing at the time of acquiring such homestead." Sec. 5860, R. S. 1919; Acrebach v. Meyer, 165 Mo. 685; Farra v. Quigley, 57 Mo. 284; Stivers v. Horn, 62 Mo. 473; Shindler v. Givens, 63 Mo. 394; Creath v. Dale, 69 Mo. 41; Stinson v. Call, 163 Mo. 323; Barton v. Walker, 165 Mo. 25; Payne v. Fraley, 165 Mo. 191. (2) Change in the form of pre-existing debts, by reducing notes to judgment, does not prejudice right of creditor to levy upon land as non-exempt as of original date of the liability. 21 Cyc. 512; 13 R. C. L. p. 602, sec. 65; Hollard v. Rongey, 168 Mo. 16; Jackson v. Boles, 67 Mo. 610; Berry v. Ewing, 91 Mo. 395; Robinson v. Leach, 27 L. R. A. 303; Sperry v. Cook, 247 Mo. 132. (3) The Missouri judgment rendered May 28, 1920, under which the property in question was sold to Standard Investment Company, was a valid judgment, and the cause of action upon which said judgment was rendered was at all times in existence. Dickson v. Patterson, 106 Kan. 794; Mangold v. Bason, 229 Mo. 459; McConnell v. Deal, 246 S. W. 604; Meierhoffer v. Kennedy, 265 S. W. 416; Miller v. Miller, 107 Kan. 505; Douglas v. Loftus, 85 Kan. 720; Atlantic Trust

Co. v. Dana, 128 Fed. 209; McLain v. Parker, 88 Kan. 717; Kothman v. Skaggs, 29 Kan. 5; 34 C. J. p. 175, sec. 386; DeGonia v. Railroad, 224 Mo. 589. (4)  Appellant had no homestead exemption rights in property in question prior to recording administrator's deed December 27, 1910. Sec. 5410, R. S. 1919; Elsea v. Smith, 273 Mo. 408; Jones v. Falls, 101 Mo. App. 536; Reynolds v. Hansen, 191 S. W. 1030. (5)  Findings of fact and conclusions of law of the trial court supported by the law and the evidence. Carpenter v. Kendrick, 252 S. W. 646.

WHITE, J.—This suit was brought by the plaintiff to set aside a sale of certain real estate made by defendant Richardson as sheriff, at which sale the Standard Investment Company became the purchaser, and to cancel the sheriff's deed made in pursuance of said sale, on the ground that the real estate is exempt from execution as a homestead.

The real estate involved was formerly owned by one Martha Smith, the sister of the plaintiff, who died in April, 1909. It was sold by her administrator and conveyed to the plaintiff, who claims that it was his homestead before and after that date. Defendant Standard Investment Company contends that the sheriff's sale was under a judgment for a debt which accrued prior to the acquisition of the homestead and before the death of Martha Smith. The facts in relation to that matter in their chronoligical order are as follows:

In July, 1907, the plaintiff Crary executed two promissory notes, and in March, 1908, he executed two promissory notes. These four notes in regular course of business were transferred to the defendant Standard Investment Company.

In April, 1909, Martha Smith died in Kansas City, Kansas, having title to the lot in Kansas City, Missouri, which the plaintiff says is exempt. Immediately after the death of Martha Smith, the plaintiff, with his family,

moved into her house in Kansas City, Kansas, where she had lived, and, on his application in Kansas, he was appointed administrator of her estate.

On the plaintiff's application, April 27, 1909, the Probate Court of Jackson County appointed one W. C. Tabb ancillary administrator in Missouri of the estate of Martha Smith. In due course the lot in question was sold by the administrator in Missouri, on the order of the probate court, to pay the debt of Martha Smith, deceased, and the plaintiff Crary became the purchaser at such sale, and December 6, 1910, a deed by the administrator was executed conveying the property to plaintiff.

In August, 1912, suit was brought by the Standard Investment Company in the District Court of Wyandotte County, Kansas, on the four notes mentioned above, against the plaintiff Crary, and in September, 1912, a personal judgment by default was rendered against him in that court for the amount of the four notes, aggregating then the sum of $1978.25. Whether Crary was a resident of Kansas at that time or not, is in dispute. The respondents claim that he was then a resident of Kansas, while the plaintiff claims he never lost his residence in Missouri.

February 28, 1920, the Standard Investment Company filed suit against the plaintiff in the Circuit Court of Jackson County, Missouri, on the judgment rendered in Kansas, and in May of that year recovered a judgment by default in the Missouri circuit court for the sum of $2877.80, being the amount of the Kansas judgment with interest. Thereafter in December, 1921, execution was issued upon such judgment, the property levied upon and sold, as stated, and bought in by the Standard Investment Company for the sum of $2500. The sheriff's deed was made to it as purchaser. This is the sale and deed which plaintiff seeks to set aside.

The defendant, Standard Investment Company, claims that the property was subject to execution because the debt accrued in 1907 and 1908, while the deed by

which Crary obtained title was filed for record in 1910, two or three years later.

The plaintiff Crary contends that his property is exempt as a homestead, as against the execution in this case, because the Kansas judgment on which the Missouri judgment was obtained, was extinct at the time suit was brought on it and therefore the "cause of action," which is the basis of the judgment in Missouri, did not exist, though the judgment was obtained upon it by default. Crary claims further that he acquired the homestead as a gift from his sister in 1905, before the notes were executed; that he lived on the property and maintained his home there from that time on.

I.   It seems to be conceded that a change in the form of the debt, which must antedate the acquisition of the homestead, in order to exclude exemption, makes no difference, and that the date of the execution of the **Change in Form of Debt.** notes, on which the original judgment was rendered, is the date of the accrual of the cause of action herein, unless, as the defendant claims, the continuity was broken by the lapse or extinction of the Kansas judgment.   [29 C. J. 867.]

II.   The appellant's argument is directed to the proposition that under the law of Kansas a judgment becomes dormant in five years and no action can be brought upon it after the expiration of one year thereafter. The statute of Kansas and Kansas decisions are brought into **Dormant Judgment.** the case in support of that proposition. In this case an interval of eight years elapsed from the time judgment was rendered until suit was brought in Missouri. It is argued, therefore, that no cause of action in Missouri accrued prior to the acquisition of the homestead, because the Kansas judgment was extinct. The record in this case contains a stipulation that all the statutes and laws of Kansas, insofar as they

have any bearing in the case, are to be considered in evidence and may be used the same as if pleaded and proved.

It is conceded that the judgment rendered in Missouri is conclusive upon the parties as to the matters litigated and determined in it. It cannot be attacked in this collateral proceeding by showing that a good defense existed to the cause of action stated.

Appellant, however, insists that he is not attacking the Missouri judgment when he attempts to show that the Kansas judgment had become extinct, but says he is attacking the *origin* of the cause of action, which the defendant claims would subject his homestead to the payment of the judgment. It is argued that, if the Kansas judgment had ceased to exist before suit was brought in Missouri, then the "cause of action," mentioned in Section 5860, the homestead statute, on which the judgment was rendered, had no existence. There is a subtlety and refinement in this distinction which we are hardly able to grasp.

A principle comes into play which determines the matter. The parties to the Kansas judgment are the same as to the judgment in the Missouri court, but on a *different* cause of action. The rule of *res adjudicata* in such case is stated thus in State ex rel. v. Mining Co., 262 Mo. l. c. 502, quoting from a Federal Supreme Court case: "In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to the matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined."

Corpus Juris, vol. 34, p. 745, puts it thus: "In an action upon the *same* claim or demand the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim, but also as to every matter which might and should have been litigated in the first suit; while in an action upon a

*different* claim or demand only those facts or matters are conclusively established by the former adjudication which are essential to, or shown to be involved in, the judgment or decree rendered.''

See also Murphy v. Barron, 286 Mo. 1. c. 410; State ex rel. v. Eastin, 278 Mo. 1. c. 669.

So, if this were the same cause of action, the plaintiff would be concluded by the Missouri judgment as to any matter that might have been litigated in that suit. But since the cause of action is different, he is estopped by the finding in the Missouri case as to every question actually determined in rendering that judgment. It is not always easy to say what is actually litigated and determined in the former action.

The opinion in the case of Garland v. Smith, 164 Mo. 1. c. 22, says that the former judgment ''bars those things which were in issue or included in the issues in the former action.'' [La Rue v. Kempf, 186 Mo. App. 1. c. 70-74; State ex rel. v. Patton, 271 Mo. 1. c. 559; 15 R. C. L. pp. 976, 977; Bleakley v. Barclay, 10 L. R. A. (N. S.) 230; State ex rel. Atkinson v. McDonald, 108 Wis. 8; Shultz v. Shultz, 136 Ind. 323; Reed v. Douglas, 74 Iowa, 244.]

At the page cited in 15 Ruling Case Law this is said regarding the estoppel of judgments in a former suit where the causes of action are different: ''While this doctrine of the effect of a judgment as an estoppel in subsequent actions is limited to matters involved in the litigation, it is generally held to be equally applicable whether the point decided is, of itself, the ultimate vital point, or only incidental, if still necessary to the decision of that point, and a judgment in a prior suit is deemed final and conclusive in subsequent litigation between the parties, or their privies, as to those matters necessarily determined or implied in reaching the final judgment, although no specific finding may have been made in reference thereto, and even though it was not raised as an issue by the pleadings in the former action. If the record of the former trial shows, that the verdict could not have been

rendered without deciding the particular matter, it will be considered as having settled that matter as to all future actions between the parties, and if a judgment necessarily presupposes certain premises, they are as conclusive as the judgment itself, for the judgment is an adjudication on all the matters which are essential to support it. The judgment, so long as it stands, imports absolute verity as to every proposition of law and fact essential to its existence against all parties to it, and every proposition assumed or decided by the court leading up to the final conclusion and upon which such conclusion is based is as effecutally passed upon as the ultimate question which is finally solved.''

The existence of the judgment in Kansas was essential to the existence of the judgment in Missouri. The judgment could not have been rendered in Missouri on the Kansas judgment unless the Kansas judgment were a valid one. That point was necessary to be litigated and determined by the Missouri court. The record contains the pleadings in the suit brought in the Jackson County Circuit Court, on the Kansas judgment, in February, 1920, and it contains these allegations:

''Plaintiff further says that no part of said judgment has ever been paid by the said defendant; that said judgment was never appealed from and remains in full force and effect; that there is now justly due and owing the plaintiff from the said defendant upon said judgment the said sum of nineteen hundred and seventy-eight dollars and twenty-five cents, with interest thereon at the rate of six per cent per annum from September 26, 1912, together with the further sum of four dollars and ninety-five cents costs paid by the plaintiff.''

This is an allegation that the Standard Investment Company held a judgment against Crary. That was directly in issue and necessary to be determined by the court before judgment could be rendered. Moreover, it stated a cause of action, because the court in Missouri could not take judicial notice of the statute of Kansas.

Foreign laws and statutes of another state must be proved as *facts* by evidence addressed, not to the jury, but to the court. [36 Cyc. 1252; Lee v. Mo. Pac. Ry. Co., 195 Mo. 400.] In the absence of evidence to the contrary, the common law is presumed to be in force in another state. So, the petition stated a cause of action. The judgment pleaded in that petition was in full force and effect, absent any showing of the Kansas statute which would affect it. The defendant in that case might have filed an answer setting up the Kansas statute and the decisions of Kansas courts construing it, as an affirmative defense, as he might have shown payment or any other facts which would have extinguished the judgment. Now he cannot be heard, in this collateral proceeding, to say that the judgment is invalid on account of some good defense which he could have presented and did not present in that case. He says he is not attacking the *judgment,* but only attacking the *cause of action* in the other proceeding, but the judgment is conclusive of the *existence* of that cause of action as pleaded.

III. The plaintiff introduced evidence tending to show that his sister, Martha Smith gave him the lot in controversy in 1905; that he first built a barn upon it, moved into it, and later built a house and moved with his family into the house, all in 1905; that he lived there until his sister died in Kansas City, Kansas, in 1909; that he then took his family and thereafter lived in her house in Kansas City, Kansas, but retained a house in Missouri with his furniture in it and visited it occasionally, about once a week; that he lived in both Kansas and Missouri during that time. He took out letters of administration in Kansas as a *resident* of Kansas, and, though he had a right as nearest of kin to administer in Missouri, he procured, as ancillary administrator, another person. The trial court found on the evidence as presented that from the time of his appointment as administrator in 1909 until December, 1912, he was a resident of Wyandotte County,

Kansas, that the law of Kansas required an administrator of an estate there to be a resident of that state. Manifestly Crary could not be a bona-fide resident of both states at the same time. He chose to discontinue his residence in Missouri, and took up his residence in Kansas in order to administer upon his sister's estate.

His homestead exemption right did not attach until he filed his deed for record. [Acreback v. Meyer, 165 Mo. 685; Farra v. Quigly, 57 Mo. 284; Barton v. Walker, 165 Mo. 25.] The case last cited holds that the occupancy as a residence and the filing of the deed must coincide. The statute definitely says when the deed is filed for record is the time when the homestead exemption right attaches. It would not even attach then unless it is actually occupied as a homestead. If then, in fact, the plaintiff did not move back to Missouri until 1912, his homestead right could not attach until then. In any event it could not attach until he obtained his deed and filed it for record.

The judgment is affirmed. All concur.