JACOB A. HENRY *et al.*

*v.*

ERNST HELDMAIER.

*Opinion filed February 21, 1907—Rehearing denied April 4, 1907.*

1. PLEADING—*what constitutes duplicity in a declaration.* Duplicity in a declaration consists of joining in one and the same count grounds of action of different natures, or of the same nature, to enforce only a single right of recovery.

2. SAME—*when declaration is not bad for duplicity.* A declaration of one count in an action of debt on a bond given to secure the performance of a contract is not subject to the objection of duplicity because, in setting out the breach of the contract, it recites more fully than is necessary the proceedings of a chancery case by which the breach had been established and the damages ascertained.

3. SAME—*when declaration is not subject to demurrer for want of allegation of notice.* A declaration in debt on a bond given to secure performance of a contract is not demurrable, as failing to allege the giving of a certain notice claimed to be a condition precedent to the forfeiture of the contract, where the declaration sets up the proceedings of a former chancery suit establishing a breach of the contract, and the decree therein, which recites the giving of the required notice before the contract was forfeited.

4. SAME—*what is equivalent to averment that a decree was unperformed.* An allegation in a declaration in an action of debt on a bond given to secure performance of a contract, that a certain decree therein set forth which ascertained the damages for the breach of contract was "in full force and effect, not reversed, appealed from or set aside," is equivalent to an averment that such decree had not been performed or paid.

5. BONDS—*when decree against principal is admissible against sureties.* A decree in a chancery proceeding involving a contract, which finds a breach of the contract and ascertains the amount of damages therefrom, is admissible in evidence in an action on a bond given to secure performance of the contract, and is *prima facie* evidence as to the amount due on the bond, where the sureties had notice of the chancery proceeding and an opportunity to defend.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

On February 8, 1899, J. C. Regan and John F. Quinn entered into a written contract with Ernst Heldmaier for the performance of certain work on the sanitary canal therein described. The work was to be done under the direction and to the satisfaction of the engineer of the sanitary district. Time was of the essence of the contract, and Regan and Quinn were to maintain on the work sufficient workmen and machinery to perform in each and every month the full *pro rata* of the work agreed upon, which was to be entirely completed by September 1, 1899. Upon notice that a sufficient number of men were not upon the work they were to immediately increase the number, and upon the failure to keep any of the terms of the contract Heldmaier was, by the giving of prior notice, to have the right to take possession of the work already done and hire other parties to complete the contract and charge any excess of cost over the stipulated price to Regan and Quinn, who agreed to furnish a bond, with surety, in the sum of $7500, which amount it was agreed should, upon violation of the terms of the contract, be liquidated damages and not in the nature of a penalty. The bond as specified was executed on the same day of the contract and signed by Jacob A. Henry and Werden Buck, appellants herein, as sureties. The condition of the bond was, if Regan and Quinn should well and truly keep and perform the contract in the time and manner therein described, then the obligation should be void, otherwise to remain in full force and virtue. Regan and Quinn did not keep and perform the contract in the manner specified, and on August 17 Heldmaier took possession of the work and completed the contract at a cost of $30,000 in excess of the contract price. Afterwards Regan and Quinn filed their bill in equity in the circuit court of Will county against Heldmaier and one George M. Campbell, setting up the agreement of February 8, 1899, between Heldmaier and themselves, and alleging that they entered upon the performance of the contract, and that on August 17, 1899, while they

were engaged in the work therein described, Heldmaier, without notice to them, took possession of their machinery and tools and retained possession of the same. The prayer was for an accounting and judgment for the value of the things so taken possession of. Heldmaier answered the bill, and also filed a cross-bill setting up the contract and bond, alleging that Regan and Quinn entered upon the work and made default therein, and that the chief engineer several times decided that the work done by them did not comply with the contract, and on several occasions demands in writing were made upon them to comply with the contract; that they failed and refused to do so, and on August 16 a written notice was served upon Henry and Buck, the sureties on the bond, that Regan and Quinn had made default, and upon their failure to comply with the contract and notices Heldmaier had taken possession and completed the contract, and that by reason thereof Heldmaier had suffered damages to the extent of $28,249.33. The cross-bill made Henry, Buck, Regan and Quinn parties defendant, and prayed for an accounting of the whole transaction. Regan and Quinn filed their answer and Henry and Buck demurred to the cross-bill, and the same was dismissed as to them. Upon a hearing on bill and cross-bill a decree was entered in accordance with the prayer of the cross-bill, to the effect that Regan and Quinn had failed to comply with the terms of the contract, and pursuant to an accounting before a master Regan and Quinn were decreed to pay Heldmaier $25,526.25.

At the September term, 1903, of the circuit court of Will county, Heldmaier began this action of debt against Regan, Quinn, Henry and Buck upon the bond of February 8, 1899. The declaration consisted of one amended count setting up the facts as above stated, and alleging that the decree for $25,526.25 rendered by the circuit court of Will county was still in full force, not reversed, appealed from or set aside. Appellants demurred both generally and specially to the declaration as amended, which demurrer was

overruled. They elected to abide by the demurrer, and a default *nil dicit* was entered, damages assessed by the court, and judgment rendered for the penalty of the bond in debt and damages in the sum of $7500, which judgment has been affirmed by the Appellate Court and a further appeal prosecuted to this court.

FREDERICK A. HILL, and DONAHOE, McNAUGHTON & McKEOWN, for appellants.

J. L. O'DONNELL, and T. F. DONOVAN, (IRA C. WOOD, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The first question is as to the sufficiency of the amended declaration. It is insisted that the declaration is double, and that the cause of action therein stated is based not only upon the bond, but also upon the judgment rendered in the chancery case. Duplicity in a declaration consists in joining in one and the same count different grounds of action of different natures, or of the same nature, to enforce only a single right of recovery. (*Chicago West Division Railway Co.* v. *Ingraham,* 131 Ill. 659.) We do not think the claim of duplicity can be maintained against the declaration in this case. It sets out the bond and also the contract which the bond was given to secure, and avers a breach of that contract. While it goes farther and sets out the pleading and decree in the chancery case, that is not done for the purpose of setting up other and different causes of action from that on the bond and contract, but for the purpose of showing that the principals on the bond have had their day in court and the damages upon the breach have been established at least against them. It would clearly not be sufficient to set up the bond and allege nothing as to the contract or the breach of it. If the bond had been executed and no contract entered into for the performance of labor, and no

breach of that contract, there could have been no breach of the bond, and so the declaration properly alleged not only the execution of the bond and contract and the subsequent breach thereof, but also that the damages under the breach had been established and adjudicated as against the principals in the bond. The proceedings in the chancery case are set out possibly with greater fullness than was actually necessary, but the declaration, taken as a whole, is directly upon the bond and for the breach of the contract, and was therefore not double, and the court committed no error in so holding. .

The contract provided that Regan and Quinn should maintain on the work sufficient material and workmen to perform in each and every month the full *pro rata* part of the work, and that upon notice from Heldmaier that there was not a sufficient number of men or machinery upon the work, Regan and Quinn would forthwith increase the force or machinery. It is insisted that this notice was a condition precedent to declaring the contract forfeited, and the declaration should allege the giving of such notice, and in the absence of such averment the declaration is subject to general demurrer. As we before said, the declaration sets up the bond, contract and chancery proceeding. In the latter the cross-bill alleged that Regan and Quinn were repeatedly notified in writing that the work was not being done according to the contract, and they were requested to provide more men and equipment, which they failed to do, and as a result Heldmaier took possession of the work. The decree found the specific allegations of the bill to be true as therein specified, and made specific findings thereon. These allegations and findings were set up in full in the declaration in this case, and constituted a sufficient allegation as to notice to Regan and Quinn to comply with the terms of the contract. The sureties on the bond were not entitled to any notice. The contract merely provided for notice to the principals. The bond said nothing about notice, but the sureties therein

bound themselves to respond to any damages for the breach of the contract.

It is again insisted that if it was intended to state a cause of action in the declaration by setting out the proceedings and decree in the chancery suit such statement is defective, for the reason that it does not allege that the decree, at the time this suit was commenced, had not been performed and was unpaid. As before said, the cause of action was not upon the decree but upon the bond, and the chancery proceeding was set up only for the purpose of showing that the principals on the bond had been heard or had an opportunity of being heard in court, and judgment had been rendered against them. But even if this was not true, the declaration alleged that the decree was in full force and effect, not reversed, appealed from or set aside. This statement was equivalent to an allegation that the decree had not been performed or paid. (11 Ency. of Pl. & Pr. 1145.)

To the amended declaration appellants demurred, which demurrer was overruled. They elected to stand by the demurrer, and judgment was entered against them. For the purpose of proving the amount due upon the bond and for which judgment should be rendered, appellee offered in evidence the decree in the chancery case which formed the basis of the judgment. It is earnestly insisted by appellants that while the decree might have been a sufficient basis for a judgment against the principals on the bond it was not sufficient as against the sureties, for the reason that they were not parties to the decree, were not bound thereby and never had their day in court on that issue. This raises the question to what extent a judgment against the principal may be introduced in evidence against sureties and how far it is binding against them. This has been a matter of discussion before the various courts of this and other countries, and there seems to be more or less conflict of opinion on the subject. Some courts hold that a judgment against the principal is *prima facie* evidence against the surety, but they

differ as to the character of the proof required to overcome the *prima facie* case, some announcing the rule to be that to avoid the effect of the judgment the surety must show fraud, collusion, mistake or payment; others, that the surety has the right to go behind the judgment against the principal and make any defense to it which he might have made if he had been a party to the suit; still others hold that the judgment is conclusive evidence against the surety. But the cases are distinguishable from ordinary cases in that the contract of the surety obligates him to be responsible for the result of a suit against his principal, or where he has been privy to the suit against the principal by notice and has been given an opportunity to defend himself. For a citation of authorities as to these different rules, see *Grommes* v. *St. Paul Trust Co.* 147 Ill. 634. In the American and English Encyclopedia of Law (vol. 27, p. 455,) the rule is announced as follows: "It is generally held that a judgment against a principal is not conclusive, but only *prima facie* evidence against his surety to show a breach of contract and liability unless the condition of the bond makes it conclusive."

This court on several occasions since the decision in the *Grommes case* has been called upon to announce the rule. In *Wanack* v. *People,* 187 Ill. 116, a judgment had been rendered against a saloon-keeper and the owner of the building, under the Dram-shop act, for causing the death of one John Alexander. Suit was subsequently brought upon the bond of the saloon-keeper, and the question was as to the extent to which the judgment against the saloon-keeper and owner of the building was evidence against bondsmen. On page 122 we said: "The rule seems to be well settled that a judgment against the principal upon official bonds and bonds by parties to suits, and proceedings in court or relating to the result of a suit or proceeding, is conclusive upon the surety. Whether or not the same rule applies in suits upon bonds like the one here involved the authorities are not altogether

harmonious; but we think the weight of authority and sound reasoning is in favor of the proposition that a judgment against the principal, especially where the surety has been notified and had an opportunity to defend, is *prima facie* evidence as to the amount of damages in a suit against the surety." In *Meyer* v. *Purcell*, 214 Ill. 62, we said (p. 64) : "Where a person is responsible over to another, and he is notified of the pendency of a suit involving the subject matter of the indemnity, his liability will be fixed and determined by the judgment rendered therein, and notice to him will be implied where he has knowledge of the pendency of the suit and participates in the defense thereof." To the same effect see *Drennan* v. *Bunn*, 124 Ill. 175. From these authorities we think the rule in this State is, that where the sureties have had notice of the pendency of the suit the judgment rendered against the principal is *prima facie* evidence against the sureties.

It is insisted, however, by appellants, that the cases thus cited are each upon a different state of facts from this case, and that those cases do not announce the rule which should be applied here. It is true, the cases cited are not exactly similar in their facts to the one at bar, but we think they announce correct principles which should govern this case. The record in the chancery case shows that the sureties on the bond were made parties defendant to the cross-bill of Heldmaier. Summons was issued against them and they appeared in court and filed a demurrer to the cross-bill, and the suit was subsequently dismissed as to them. This was sufficient notice to give them an opportunity to defend in that suit if they saw fit. The cross-bill set up the bond and contract and alleged a breach. The sureties knew, or were chargeable with knowledge, that if judgment was rendered against the principals they would be liable on their bond for the payment of the same to the extent of the amount therein named. If they had any defense it was their duty to appear and protect their rights. When they demurred to the

amended declaration in this case and the same was overruled they saw fit to stand by their demurrer, and the decree in the chancery case was *prima facie* evidence of the amount due upon the bond as against the sureties, and the circuit court committed no error in so holding.

We find no reversible error, and the judgment will be affirmed.

*Judgment affirmed.*