THE STATE EX REL. EFFIE C. GOTT v. FIDELITY & DEPOSIT COMPANY
OF MARYLAND, Appellant.—298 S. W. 83.

Division One, September 16, 1927.

1. **ADMINISTRATION: Order for Distribution: To Parties Entitled Thereto.** That part of the order of the probate court approving the final settlement which directs the administrator to pay over the balance in his hands "to the parties entitled thereto" is either indefinite and meaningless, or an attempt to invest the administrator with judicial discretion to determine the proper distributees and the amount of their interests, and in either case is void.

2. ———: **Final Settlement: Right of Distributee to Sue.** An order of the probate court approving the final settlement showing that all expenses and probated demands have been paid in full, that all unpresented claims are barred and that there remains in the administrator's hands a named sum, even though the order contains the further void direction that he pay over the balance in his hands "to the parties entitled thereto," entitles the rightful distributee to maintain an action in the circuit court for the amount due her from the administrator under the law; and she may maintain such an action even though there be no final settlement, where all these facts are made to appear.

3. ———: **Domicile of Intestate: Party Entitled to Administer: Estoppel: By Conduct.** If the intestate's residence was in this State, his wife's domicile was also here, and she as his widow had the primary right to administer his estate; and his brother could not foist himself into office as administrator by representing decedent to be a resident of another State, and while thus intrenched later contend, on a question of distribution, that the residence was in Missouri. But in this case estoppel by conduct is not involved, because not invoked.

4. ———: ———: **Determined by Probate Court: Estoppel by Record.** The intestate decedent died in Kansas leaving no descendants, and his brother was granted letters to administer his estate in Missouri, and his widow, claiming the entire personal estate as sole distributee under the law of Missouri (Sec. 253, R. S. 1919) declaring that the personal estate of a nonresident decedent shall descend according to the laws of his domicile and under the laws of Kansas providing that the estate of a deceased husband shall go to his widow if he leaves no issue, brings suit in the circuit court against the administrator's surety for the amount of money remaining in his hands after all demands and expenses were paid. **Held**, that the judicial determination of the intestate's place of residence, made by the probate court in granting letters of administration to the brother, does not constitute estoppel by record, and is not conclusive in this collateral action.

5. ———: ———: ———: ———: **Venue: Question of Fact.** The question of decedent's residence is a jurisdictional question determining the venue, and is one of fact, not of law, and is a vital part of the order of the probate court granting letters of administration.

6. ———: ———: ———: ———: **Finding on which Jurisdiction is Based.** Where the application by the brother for letters of administration was based on the sole ground that decedent lived in Kansas and owned real

estate in Missouri, and the probate court granted the letters, it must be assumed that the court found that deceased lived in Kansas; and it must be further conceded that the probate court was one of such rank and authority that its decision on all such questions is invulnerable to collateral attack.

7. ———: ———: ———: ———: **Judgment in Rem: Ex parte Appointment: The Res.** Considering an administration in its entirety, the res is the property grasped through the administrator as a court officer, but in the preliminary proceeding for his appointment the res is the status of the officer; and though the order of appointment is to be regarded as a judgment in rem, in the consideration of its effect as estoppel of record, on the question of decedent's domicile, it must be borne in mind that such estoppels must be mutual, and that the appointment is made on an **ex parte** application and that there is no service upon or appearance of the distributee who, in the collateral action to obtain a judgment against the surety for money in the administrator's hands, relies upon it as **res adjudicata** of decedent's residence.

8. **JUDGMENT IN REM: How Far Binding.** The statement that a judgment **in rem** is binding on the whole world is true only in a restricted sense; in establishing the status of a person or thing or the title to property it is conclusive on every one, but not so on related facts, no matter how necessary to the result. The effect on the res cannot be disputed, but to extend its finality to its inducing conclusions of facts, when the same facts are later at issue in a collateral action not affecting the res, would make it operate **in personam,** and that cannot be done as against original parties, and much less as against strangers, to the proceeding.

9. ———: ———: **Judgment of Probate Court: Domicile of Intestate.** The finding of the probate court on the question of decedent's residence, in an **ex parte** proceeding for the appointment of an administrator, while a judgment **in rem,** is not **res adjudicata** in a subsequent collateral action between the interested parties, unless the issue be raised for the purpose of attacking the title of the administrator to his office, or in some way impugns the former adjudication with respect to the res (his status).

10. ———: **Letters of Administration: Admissibility: Status of Administrator.** Letters of administration are admissible as proof and collaterally conclusive when the issue is on the legal status of the administrator and his acts as such, whether he be a party or not. [Holding that Berger v. K. O. T. M., 203 Mo. App. 685, goes too far in saying evidence of the grant of letters should be received only in actions in which the personal representative is a litigant, and overruling Lancaster v. Washington Life Ins. Co., 62 Mo. 121, and the cases following it, in which it is held that the letters are competent in an action not attacking the status of the administrator.]

11. **ADMINISTRATION: Order of Distribution: Premature: Valid in Part: Distributees: Estoppel of Record.** The intestate decedent died in Kansas leaving no descendants, and his brother was appointed administrator by the probate court of this State. His widow claims the whole personal estate as sole distributee under the Missouri law declaring that the personal estate of a non-resident decedent shall descend according to the laws of his domicile and under the laws of Kansas providing that the estate of a deceased husband shall go to his widow if he leaves no issue, and brings suit in the circuit court against the surety of the administrator for all moneys in the hands of the administrator, all demands and expenses of administration having been paid. During the course of the administration the administrator made application to the probate court for an order authorizing him to distribute $5,000 to the collateral heirs, and for attorney fees.. The probate court heard evidence in support and against the application, the

administrator being present in person and by his attorney, and the widow by her attorney, and later, in the absence of the parties, except the widow's attorney, made an order, (a) finding that decedent was a resident of Kansas when he died; that his collateral heirs were not entitled to any part of the personal estate, but that his widow was entitled to the whole of it; (b) ordering that the application for 'a partial distribution and for an allowance of attorney fees be denied; and (c) directing the administrator to pay over to the widow all the personal estate in Missouri, after the payment of the necessary costs of administration. Held, that the order was partly good, and partly bad. It was bad because made before final settlement and in the face of an affirmative record showing that administration costs, including attorney fees, were undetermined and unpaid, and therefore it was premature and to that extent void. But it was responsive and valid in so far as it denied distribution to the collateral heirs and assigned the residence of decedent in Kansas as the ground of the order, and to that extent it was conclusive in this collateral proceeding.

12. ADMINISTRATION: Order of Distribution: Proceeding in Rem: Notice: Appearance: Voluntary Parties: Finality. A proceeding for the distribution of the assets of an estate is in rem, and where the res is the property involved the statute provides for personal service upon resident distributees and publication notice to non-residents, and they may appear, prosecute and defend, or appeal, or they may voluntarily make themselves parties, whether notice is given or not; and if they appear and make themselves parties they and their privies are bound in a collateral proceeding by the order of distribution made in the probate court, where no appeal therefrom is taken, and they are so bound whether all the distributees intervene in the probate proceedings, or whether all are made parties in the collateral proceeding in the circuit court brought by one of the distributees to recover from the administrator or his sureties the amount by the order awarded to her.

13. ———: ———: ———: Res Adjudicata: Estoppel by Verdict: Inter Partes. The heart of the doctrine of res adjudicata is not the character of the relief awarded in the former action; it is the fact that the parties have had their day in court. It applies to those who have made themselves adversary parties to a judicial proceeding (the procedure permitting), though no personal judgment can follow; and it applies to probate orders of distribution. A proceeding may be in rem, but is not for that reason necessarily one inter partes or in personam. [Overruling dictum to contrary in Byrne v. Byrne, 289 Mo. l. c. 122, and Canty v. Halpin, 294 Mo. l. c. 138.]

14. ———: ———: ———: ———: Absence of Notice from Record: Presumption: Jurisdiction. A failure of the probate court record to show the notice required by statute of the application for an order of distribution does not prevent the application of the doctrine of res adjudicata to the order. If the record is silent on the question, and does not show either that the notice was given or that it was not given, the law conclusively presumes in a collateral proceeding that every prerequisite jurisdictional step was taken; and parole testimony of distributees that they received no notice that the order was about to be made is not competent to impeach the record.

15. ———: ———: Notice to Distributees. The statute requires notice of an order of distribution to be given only to distributees "not applying therefor," and neither an administrator who applies for the order through his brother as attorney, nor the brother, both claiming to be distributees, is entitled to notice.

16. ———: ———: Jurisdiction: Subscribing Oath. If the record shows that the pro tem judge of probate "took the oath of office," though it does not. recite that he "subscribed" it, he had jurisdiction to make the order of distribution. The Constitution required him to "take and subscribe" an

oath, and the words are interchangeable, and have the same meaning, in the statute, and if the record affirmatively shows that the officer "took the oath" the law presumes that he complied with the statute and the Constitution, and subscribed to it.

17. ——— : ——— : ——— : **Judge Pro Tem.**  The jurisdiction of a probate judge pro tem ends with the term at which he qualified or when he ceases to serve at that term, but the court does not lose jurisdiction of a pending cause, submitted and not decided during the term; and if he is elected and qualifies at a later term, he has jurisdiction to determine the cause.  And if the cause is an application for an order of distribution, filed at one term, heard and taken under advisement, an order made by him at the subsequent term is valid and binding in a later collateral proceeding, and is in no wise invalidated because he failed to communicate to the parties present at the hearing before entering it.

18. ——— : ——— : **Obligation of Surety.**  If the order of distribution made by the probate court is binding on the administrator, it is under the statute (Sec. 18, R. S. 1919) equally binding on his surety.  And if the administrator refuses to turn over to a distributee the balance of money on hand, as directed by the valid order of distribution made by the probate court, such distributee can maintain an action in the circuit court for the amount against the surety alone.

19. **VEXATIOUS DELAY: Penalty: Attorney Fee.**  Vexatious obstruction or delay must ordinarily occur before the filing of the suit; and if the distributee files her suit in the circuit court against the administrator's surety for the moneys allowed her by the order of distribution twelve days after the order was made by the probate court, and the legal questions raised by her petition are such that lawyers might honestly and reasonably differ as to the validity of the order and her right to recover, she should not be allowed a penalty or attorney fees on the theory of vexatious delay.  .

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2668, p. 739, n. 77.  **Executors and Administrators,** 23 C. J., Section 34, p. 1010, n. 48; Section 144, p. 1055, n. 19; Section 243, p. 1084, n. 49; p. 1085, n. 53; Section 247, p. 1088, n. 62; 24 C. J., Section 1355, p. 508, n. 64; Section 1358, p. 508, n. 80; Section 1363, p. 512, n. 16; Section 1389, p. 523, n. 56; Section 1391, p. 525, n. 71; Section 1404, p. 532, n. 29, 30; Section 2589, p. 1079, n. 18; Section 2601, p. 1086, n. 98.  **Judges,** 33 C. J., Section 207. p. 1025, n. 28; Section 228, p. 1035, n. 50.  **Judgments,** 33 C. J., Section 42, p. 1079, n. 94; 34 C. J., Section 1236, p. 818, n. 92; Section 1331, p. 923, n. 87; Section 1407, p. 988, n. 41; Section 1663, p. 1172, n. 13; p. 1173, n. 17, 20; p. 1174, n. 21.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern,* Judge.

REVERSED AND REMANDED (*with directions*).  .

*R. E. Ball, Joseph A. Guthrie, Caleb S. Monroe* and *S. L. Mathews* for appellant.

(1)  The order of the probate court by which it attempted to direct distribution of the money and personal property of the estate, being without written or published notice to all the parties interested and not being made at the first semi-annual or the final settlement was *coram non judice.*  R. S. 1919, sec. 241, Amended, Laws 1921, p. 115; State ex rel. Brouse v. Burnes, 129 Mo. App. 474; Lilly v. Menke, 126 Mo. 190; Baker v. Lumpee, 91 Mo. App. 560.  (2)  After hearing

the application for distribution on November 9, 1921, and taking the same under advisement, Judge ESTILL, during the September term, 1921, failed or refused to act further and another special judge was elected. This refusal on his part was tantamount to his resignation or death. Sec. 2566, R. S. 1919; State v. Silva, 130 Mo. 440; State v. Higgerson, 110 Mo. 213; Viertel v. Viertel, 212 Mo. 562. His powers will be closely scrutinized and strictly construed. Autenrieth v. Railroad, 271 Mo. 248, 196 S. W. 1129. He cannot become a *de facto* judge. Ex parte Fish, 184 S. W. 479. (3)   Under the pleadings and the evidence there was no question of vexatious refusal to pay by the defendant to be submitted to the jury. (a)   Because the petition alleges no facts of vexatious refusal, but simply the conclusion of the plaintiff. Dolph v. Maryland Casualty Co., 303 Mo. 534. (b)   Because the question of law involved, i. e. the force of the order of the probate court, was one about which lawyers might honestly differ. Mound City Roofing Co. v. Ins. Co., 218 Mo. App. 395; State ex rel. Ins. Co. v. Allen, 295 Mo. 307. (c)   Because there was no evidence in the case other than to show that defendant's refusal to pay and the defense of this action was in good faith. Aufrichtig v. Life Ins. Co., 298 Mo. 1; Berryman v. Surety Co., 285 Mo. 379; Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399; Kusnutzky v. Security Ins. Co., 281 S. W. 47; State ex rel. v. Allen, 306 Mo. 197; Campbell v. Fire Ins. Co., 269 S. W. 645. (4)   The obligation sued upon is a statutory bond. The right of action is created by statute and not by contract. The amount of the recovery is provided by statute. The action, therefore, is not one to recover a loss under a policy of insurance within the meaning of Sec. 6337, R. S. 1919, and no penalties can be assessed. Secs. 17, 18, 280, 1002, 1018, 1005, 1006, 1030, 1031, 1034, 1035, 1008, 1011, 1013, 1014, 1016, 1017, R. S. 1919. Sec. 6337, R. S. 1919, is highly penal and must be so construed. Mears Mining Co. v. Casualty Co., 162 Mo. App. 178. (5)   It is only in cases where the sole duty remains upon the administrator to pay a legacy and he fails so to do, that an action can be maintained without waiting for an order of the probate court. Clark v. Sinks, 144 Mo. 451. (6)   The granting of letters of administration upon the estate of Thomas A. Mathews was not an adjudication by the court that he was a resident of Kansas. Letters of administration were granted in the estate upon the application which inadvertently recited that deceased was a resident of Kansas, and plaintiff now urges that such order is *res adjudicata* of his residence in such State. In support of that contention counsel cite cases where attempts were made to attack the validity of such judgments collaterally, by showing the nonexistence of some fact essential to the vesting of the jurisdiction. The deceased, being admittedly owner of real estate in Missouri, the Probate Court of Jackson County, under the provisions of

Sec. 4, R. S. 1919, had jurisdiction to grant the letters applied for, provided it found either one of two facts: first, that the deceased had a mansion house or place of abode in Jackson County; or, second, that the deceased had no mansion house or place of abode, and that his lands, or the greater part thereof, lies in Jackson County.   A judgment, unless rendered in a former action between the same parties upon the same cause of action, is not *res adjudicata* as to every fact that might have been determined at the hearing.   34 C. J. 927, sec. 1332; Ridgley v. Stillwell, 27 Mo. 132; Thormann v. Frame, 176 U. S. 350; Dickey v. Heim, 48 Mo. App. 114; American Paper Products Co. v. Aetna Life Ins. Co., 204 Mo. App. 527.   That *"res adjudicata* is an affirmative defense, and like all other defenses of that character must be pleaded" is a rule of practice firmly established in this State.   Kilpatrick v. Robert, 278 Mo. 257.   (7) In the collection and preservation of the estate, the administrator unquestionably represents all the heirs.   But when the time comes to distribute, the administrator is no longer acting for them, but is dealing with them.   They become adverse parties in this transaction, and in recognition of that fact such an order made without notice to them, though acted upon by the administrator, is *coram non judice*.   State ex rel. v. Burnes, 129 Mo. App. 474.   (a)   The recital of the appearance of the parties cannot avail the plaintiff in this case.   Bell v. Brinkman, 123 Mo. 276; Little v. Browning, 287 Mo. 278.   (8)   Defendant contends that the circuit court was without jurisdiction to try this case, because, aside from the void finding of April 26, 1922, there had been no determination by the probate court as to the share of any distributee.

*A. E. Watson, Daniel C. Ketchum* and *Hubert Lardner* for respondent.

(1)   The judgment of the probate court on the application for and the granting of letters of administration conclusively determined the residence of deceased at the time of his death and is impervious to collateral attack.   Citizens Bank v. Moore, 215 Mo. App. 21; Wyatt v. Wilhite, 192 Mo. App. 551; Johnson v. Beazley, 65 Mo. 264; Cox v. Boyce, 152 Mo. 576; In re Estate of Davison, 100 Mo. App. 268; State v. Schenkel, 129 Mo. App. 241; State ex rel. Holthaus v. Holtcamp, 277 S. W. 607; Linder v. Burns, 243 S. W. 364; State ex rel. v. Mills, 231 Mo. 493; Sullinger v. West, 211 S. W. 65.   (2)   The question of residence of decedent is further concluded by judgment of probate court of April 26, 1922.   Viehmann v. Viehmann, 298 Mo. 356; Wilson v. Wilson, 255 Mo. 528; Hart v. Petty, 266 Mo. 296; Oldaker v. Spiking, 210 S. W. 62; Sisk v. Wilkinson, 305 Mo. 328; State ex rel. v. Mills, 231 Mo. 493.   (3)   The judgment of probate

court of April 26, 1922, is not void for any of the reasons urged against it. (a) Application for partial distribution may be made at any time when settlement shows there is sufficient money to satisfy all demands against the estate. Sec. 237, R. S. 1919; State v. Reynolds, 286 Mo. 126. (b) The record of trial recites appearance of all parties and cannot be controverted by extraneous evidence. Sisk v. Wilkinson, 305 Mo. 328; Conway v. Robinson, 178 S. W. 154; Herman v. Bank, 291 S. W. 156. (c) No notice was required. The application for partial distribution was made by administrator on behalf of all persons who could be interested except the widow and she appeared and contested said application. Sec. 241, R. S. 1919, Amended, Laws 1921, p. 115. (d) The widow was the sole distributee and the only one entitled to notice under the statute. Sec. 241, R. S. 1919. (e) If notice was necessary it was the duty of administrator to give same and he cannot urge his neglect as a defense. Harter v. Petty, 266 Mo. 296. (4) Judge ESTILL did not lose jurisdiction by taking cause under advisement and not rendering judgment until April 26, 1922. Laws 1921, p. 254; Petet v. McClanahan, 297 Mo. 677; State ex rel. v. Williams, 136 Mo. App. 330; Bank v. Graham, 147 Mo. 250; State v. Sneed, 91 Mo. 552; Mengel v. Leach, 226 S. W. 883; Lambert v. Lambert, 208 S. W. 118; R. S. 1919, secs. 2445, 2563 to 2566; State v. Gamble, 108 Mo. 500, in re oath. (5) The question of vexatious refusal to pay was properly submitted to the jury. State ex rel. v. Bonding & Surety Co., 279 Mo. 535; Fay v. Life Ins. Co., 187 S. W. 866; Niese Grocer Co. v. Bonding Co., 259 S. W. 852; Johnston v. Fid. & Deposit Co., 275 S. W. 973; Block v. Fid. & Guar. Co., 290 S. W. 440; School District v. Accident & Liability Co., 234 S. W. 1017. (6) The circuit court had jurisdiction of this cause and it was timely brought. Pound v. Cassity, 166 Mo. 419; State ex rel. v. Dickinson, 213 Mo. 66; State ex rel. v. Reynolds, 226 S. W. 553.

ELLISON, C.—Action in the Circuit Court of Jackson County against surety on administrator's bond, to recover a sum representing the balance on hand for distribution in the estate of Thomas A. Mathews, deceased, as shown by the final settlement of his administrator in the Probate Court of Jackson County. The petition prayed also for a ten per cent penalty for vexatious delay and a reasonable attorney fee. The sole defendant is a corporation engaged in the indemnity bonding business under the insurance laws of Missouri. The administrator was not joined as a defendant in the amended petition on which the case was tried. The relator, or plaintiff, is the widow of the intestate. She had a verdict for $7,505.90 debt, $597.82 interest, $350 penalty and $1500 attorney fee. From the judgment on the verdict the defendant has appealed.

The deceased left no lineal descendants. The widow claims the entire personal estate as sole distributee on the ground that he died a resident of Kansas. Under Section 253, Revised Statutes 1919, the personal estate of a non-resident decedent descends according to the laws of his domicile, and Section 3842, General Statutes of Kansas, provides that the estate of a deceased husband shall go to his widow if he leave no issue. The defendant-appellant maintains the intestate was, in fact, a resident of Missouri, and that the widow is entitled only to one-half the estate, under Sections 321 and 325, Revised Statutes 1919.  ·

While the respondent's petition alleged the deceased lived in Kansas, her course and theory of trial did not open this issue on its merits. The pleaded contentions on which she stood were (a) that the Jackson County Probate Court, in granting letters of administration on the estate, found that the last residence of the intestate was in Kansas, and (b) that, later, the same court adjudged her to be sole distributee for that reason, in passing on an application for an order of partial distribution filed by the administrator. She asserts these two judicial acts were conclusive determinations of the crucial question of residence, and that the latter thereby became *res judicata* as against the defendant surety.

The trial court took this view of the case, excluded the defendant's proffered testimony on the issue of fact, and peremptorily instructed the jury to find for the plaintiff, ·submitting only the issue as to whether the appellant had been guilty of vexatious delay. The defenses interposed by the appellant will be noticed in the course of the opinion. It should be remembered, however, that the answer did not sound in equity, and that the cause was tried to a jury as a law case.

The facts must be reviewed a little more fully before taking up the legal questions. The intestate, Thomas A. Mathews, died intestate on or about July 26, 1920, at Mound City, Kansas. An administration of his estate was commenced in the Probate Court of Jackson County, Missouri, ten days thereafter, on August 5, 1920, when his brother W. G. Mathews filed a verified application for letters. The application stated the intestate left no lineal descendants; that his widow was a resident of Mound City, Kansas; that his heirs. (naming three brothers, one sister, eight nieces and three nephews) were non-residents of Missouri, except the applicant, who lived in Kansas City, Missouri. Regarding the domicile of the deceased and the location of his estate, the application recited he was a resident of Mound City, Kansas, at the time of his death, and that he owned real estate in Missouri of the probable value of $9,000. No findings of fact were contained in the order of appointment, and there was no appearance by any of the parties in interest, except the administrator, so far as

the record shows. The bond upon which this suit is based was given later, but no question is raised concerning its application to the proceedings involved.

The validity of the appointment of the administrator by the foregoing proceeding is conceded, but the appellant offered, at the trial below, to prove that in signing the application the administrator understood and meant the recital therein concerning the deceased's residence in Kansas to refer to the place of his death and not to his domicile, and that the deceased, in fact, had never been a resident, citizen or voter of that State. This testimony, as already stated, was excluded by the trial court; we set it out here for a better understanding of the matter, although no point has been preserved on this appeal respecting the rejection of the evidence.

On June 30, 1921, through his attorney, S. L. Mathews, another brother of the deceased, the administrator filed an application for an order authorizing him to distribute $5,000 to the collateral heirs, to offset a payment of the same amount previously made to the widow, and for an allowance for attorney fees. This application was taken up for consideration by the probate court on November 9, 1921, during the September term. At the time Hon. Ben R. Estill of the Kansas City bar was sitting as judge *pro tem.* in the absence of Judge GUINOTTE, the regular judge, pursuant to Sections 2563-66, Revised Statutes 1919. The testimony affirmatively shows the administrator and his brother, attorney S. L. Mathews, were present in person, and the widow was present by her attorney. Evidence was heard, arguments made, briefs submitted and the cause taken under advisement.

From and after the hearing on November 9, 1921, nothing further was done in regard to the application at that term of the probate court, or at the next term, but on April 26, 1922, during the February term, it happened that Judge ESTILL was again presiding as judge *pro tem.* On this day, Judge ESTILL called up the application in the absence of the parties, except the widow's attorney, and entered an order finding that the intestate was a resident of Kansas when he died; that his heirs were not entitled to any part of the estate personalty and that the widow was entitled to the whole of said estate. It was accordingly ordered that the application for a partial distribution be denied, as was the allowance of attorney's fees "at this time." The order further directed the administrator to pay over to the widow all of the personalty of the estate located in Missouri, "after the payment of the necessary costs of administration."

The probate records and papers are silent as to whether the distributees of the estate were notified of the administrator's application for the foregoing order in accordance with Section 241, Laws 1921, page 115. The administrator and his brother, Attorney Mathews,

both of whom were heirs and distributees, were permitted to testify that the only notice they had of the order was from a letter sent by the widow's attorney the next day, enclosing a copy of the order. No appeal was taken.

The administrator filed his final settlement, showing a balance of $7,505.90, on September 21, 1922. The probate court approved the settlement on the same day, finding the estate fully administered and all costs paid. It was ordered that the administrator pay over the balance in his hands "to the parties entitled thereto," and that on filing proper receipts he stand fully and finally discharged. No appeal from the order of final settlement was taken by any party in interest.

Other evidence was presented which may be referred to briefly. The plaintiff testified she had not been paid the money for which she was suing, and that the deceased left no lineal descendants. The Kansas statute already mentioned was introduced, and there was expert testimony concerning the reasonable value of the legal services of her attorneys. The appellant showed that the administrator and the heirs, through the administrator, had signified to the appellant surety their objections to the widow's receiving the whole personal estate. · Much of the evidence offered by the appellant was excluded by the court, but it cannot be noticed, as no error in that regard is saved for review on this appeal.

I. (a) Appellant's most sweeping contention is that the circuit court had no jurisdiction of the action. It is urged on the theory that the probate court's order approving the administrator's final settlement was nugatory and void, insofar as the same purported to be an order of distribution; and that until the probate court determined the disputed question of the widow's interest in the personal estate by a proper order of final distribution, jurisdiction over the administration remained exclusively in the probate court and could not be transferred to the circuit court by a suit on the administrator's bond. Under the facts of this case, the direction in the order that the administrator pay over the balance in his hands *to the parties entitled thereto* is, as the appellant contends, either indefinite and meaningless, or else an attempt to invest the administrator with judicial discretion to determine the proper distributees and the amount of their interests. In either case it would be void. [24 C. J. sec. 1389, p. 523; 3 Woerner, American Law of Administration (3 Ed.) sec. 562, p. 1911; 4 Schouler on Wills, (6 Ed.) sec. 3426, p. 2760.] This was intimated in Morehouse v. Ware, 78 Mo. 100, 101, 103.

**Indefinite Distributees.**

(b) Nevertheless, that part of the order approving the final settlement established conclusively that all expenses and probated de-

mands had been paid in full, that any unpresented claims were

**Suit by Distributee.**
barred, and that nothing remained to be done except for the administrator to distribute the balance on hand. In these circumstances the widow can maintain her action without an order of distribution, and might do so without even a final settlement, the foregoing facts otherwise appearing. [State ex rel. v. Matson, 44 Mo. 305; State ex rel. v. Dickson, 213 Mo. l. c. 90-1, 111 S. W. 817; Kelley's Missouri Probate Law (5 Ed.) sec. 387, pp. 483-4.] When facts exist making it bona-fide necessary to retain the estate assets for further probate administration, an action such as the present would be premature, as is ruled in Clarke v. Sinks, 144 Mo. 454, 46 S. W. 199, cited by appellants, but the mere circumstance that the administrator differs with a distributee regarding the extent of her interest in the estate, will not deprive the circuit court of jurisdiction. [State ex rel. v. Grigsby, 92 Mo. 419, 5 S. W. 39.] This assignment is ruled against the appellant.

II. (a) The next question is whether the judicial determination of the intestate's place of residence, made by the probate court in granting letters, is conclusive in this collateral action. We think not. Let it be observed that the inquiry is confined to the application of the doctrine of *res judicata* or estoppel by record. The law of estoppel by conduct is not involved, because not invoked by the respondent— though it would seem, if the appellant's contention be true that the

**Estoppel by Conduct.**
intestate's residence was in Missouri, his wife's domicile would have followed (Ware v. Flory, 199 Mo. App. 62, 201 S. W. 593), and as his widow she would have had the primary right to administer the estate under our statute (Sec. 7, R. S. 1919). The administrator could hardly foist himself into office by representing the deceased a resident of Kansas, and while thus intrenched later contend, on a question of distribution, the residence was in Missouri. [15 R. C. L. sec. 434, pp. 957-8.]

(b) Getting back to the question of estoppel by record, there are three (in a more limited sense, two) kinds of *res judicata*: (1) a former adjudication on the same cause of action between the same parties is conclusive in the second proceeding as to every issue of

**Res Adjudicata.**
fact which was or might have been litigated in the first, under what is called *estoppel by judgment;* (2) a judgment between the same parties on a different cause of action is binding as to facts actually decided, or in the absence of evidence as to the issues passed upon, is conclusive on the pleaded issues of fact, ultimate or supporting, necessarily determined in rendering the judgment, the rule being known as *estoppel by verdict* (In re Guardianship of Angela McMenamy, 307 Mo. 110, 270 S. W. 662; National Bank of Commerce v. Maryland Casualty Co., 307 Mo.

435, 270 S. W. 691; Crary v. Standard Inv. Co., 313 Mo. 456-7, 285 S. W. 459); (3) and a judgment *in rem* is conclusive on the whole world.

(c)   Testing the respondent's contention by these rules, it must be granted, as she argues, that the question of residence was a jurisdictional question determining the venue (Sec. 4, R. R. 1919), and that the decision thereof was an essential and integral part of the probate-court order. In some decisions the issue is treated as of a preliminary or collateral nature (Ewing v. Mallison, 65 Kan. 484, 70 Pac. 369, 93 Am. St. 306; Concha v. Concha, 11 App. Cas. 541, 56 L. J. Ch. 257, 55 L. T. N. S. 522, 35 W. R. 477, 11 Eng. Rul. Cas. 22); but the question is one of fact, not of law, and in this State is held to be a vital part of the adjudication. [State ex rel. v. Shackelford, 263 Mo. 61-2, 172 S. W. 347; State ex rel. v. Mills, 231 Mo. 500, 133 S. W. 22.]

Residence: Question of Venue.

(d)   It must be taken as further true that the probate court found the deceased lived in Kansas, for that fact, coupled with the fact that he owned real estate in Missouri (all or the greater part presumably in Jackson County), was the sole ground set up in the application, on which the order was necessarily based (Secs. 7, 8, 14, R. S. 1919), and it must be assumed the court entertained jurisdiction on this the only ground presented for its exercise. [Brown v. Weldon, 34 Mo. App. 382; Johnson v. Ionia County, 202 Mich. 597, 168 N. W. 421.] There is no denying, too, the probate court was one of such rank and authority as that its decision on all such questions is invulnerable to collateral attack. [Johnson v. Beazley, 65 Mo. 264, 27 Am. Rep. 276; Wyatt, Admr. v. Wilhite, 192 Mo. App. 553, 183 S. W. 1107.] Many other cases might be cited. The law on these questions is clear. The infirmity in the respondent's contention is in another spot.

Jurisdictional Fact.

(e)   In this State the appointment of an executor or administrator is made on an *ex parte* application without previous notice. (Sec. 14, R. S. 1919; Laws 1923, p. 110.) From its nature the proceeding is *in rem*. [1 Herman on Estoppel, sec. 327, p. 375.] Looking at the administration as an entirety, the *res* is the property of the deceased grasped through the personal representative as a court officer (Bartlett v. Hyde, 3 Mo. 490; 1 Woerner, American Law of Administration (3 Ed.) sec. 148, pp. 501-2); but in the preliminary proceeding for his appointment, the *res* is the status of the officer. [Thormann v. Frame, 176 U. S. 355, 44 L. Ed. 500; Gratiot County State Bank v. Johnson, 249 U. S. 248, 39 Sup. Ct. Rep. 263, 63 L. Ed. 587.] The point involved in the case at bar is as to the scope and effect of the record estoppel, regarding the probate court order as a *judgment in rem,* and bearing in mind there was no service upon or appearance by the respondent,

Ex Parte Appointment.

317 Mo. Sup.—69.

and that such estoppels must be mutual. [State ex rel. v. Branch, 134 Mo. 605; Bennett v. Gen. Acc. Corp., 213 Mo. App. 430, 255 S. W. 1076; 34 C. J. sec. 1407, p. 988; 15 R. C. L. sec. 432, p. 956.]

(f) The statement that judgments *in rem* are binding on the whole world is true only in a restricted sense. The *judgment* establishing the status of a person or thing or the title to property is conclusive on everyone; but not so of the related findings of fact, no

**Judgment in Rem.** matter how necessary to the result. [Bigelow on Estoppel (6 Ed.) pp. 48-50, 254-6; 1 Herman on Estoppel, sec. 338, .p. 387; Tilt v. Kelsey, 207 U. S. 51, 28 Sup. Ct. Rep. 1, 52 L. Ed. 95; ·Brigham v. Fayerweather, 140 Mass: 411, 5 N. E. 265.] The effect on the *res* cannot be disputed, but to extend the finality of the judgment to its inducing conclusions of fact, when the same facts are later at issue in a collateral action not affecting the *res,* would be to make the judgment *in rem* operate *in personam.* This may not be done even as against the original parties in interest, much less against strangers to the former proceeding. [33 C. J. sec. 42, p. 1079; 15 R. C. L. sec. 85, p. 642; Graves v. Smith, 278 Mo. 599, 213 S. W. 128; Pennoyer v. Neff, 95 U. S. 719,. 24 L. Ed. 565.] Expressions in some cases that a judgment *in rem* binds "parties to the proceedings," (Myers v. International Trust Co., 263 U. S. 73, 44 Sup. Ct. Rep. 86, 68 L. Ed. 165) and "parties entitled to be heard" (Manson v. Williams, 213 U. S. 455, 29 Sup. Ct. Rep. 519, 53 L. Ed. 869) with respect to *facts found,* evidently are to be construed as referring only to those who legally could, and did, make themselves parties to the original proceeding in a personal sense by appearance, participation, etc. (Gratiot County State Bank v. Johnson, 249 U. S. l. c. 249). We shall have occasion presently to consider the effect of such intervention; what has just been said refers to judgments the efficacy of which arises solely from the fact that they are *in rem.*

(g) It follows that a finding on the question of the residence of the deceased, in an *ex parte* proceeding *in rem* for the appointment of an administrator, is not *res judicata* in a subsequent collateral action between the interested parties unless the issue be raised

**Collateral Attack.** in the second proceeding for the purpose of attacking the title of the administrator to his office, or in some way impugning the former adjudication with respect to the *res* —his status. All the authorities on the point are not harmonious, and in cases reaching the same result the grounds of decision seem to be different; but the trend of modern opinion is said to be in line with the conclusion herein expressed. [34 C. J. sec. 1663, p. 1173; Thormann v. Frame, 176 U. S. l. c. 355; Overby v. Gordon, 177 U. S. 221 et seq., 20 Sup. Ct. Rep. 603, 44 L. Ed. 741; Tilt v. Kelsey, 207 U. S. l. c. 51 et seq.; Dunsmuir v. Scott, 217 Fed. 202; In re Mesa's Estate, 87 Misc. 242, 149 N. Y. Supp. 536.] Other illustrations of

the inconclusive effect in collateral actions of probate findings of basic facts in the appointment of an administrator or executor, are cited in the footnotes to 23 Corpus Juris, page 1085.

(h)   In line with the foregoing, the St. Louis Court of Appeals indicated in Bergman v. K. O. T. M., 203 Mo. App. 698, 220 S. W. 1029, its view that letters of administration ought to be inadmissible even as prima-facie evidence of the *fact* of the intes-
**Letters as** tate's death, in a collateral action in behalf of his widow
**Evidence.** against an insurance company—a stranger to the original probate proceedings—and that such proof may properly be introduced only in actions to which the administrator is a party, for the purpose of establishing his *status* and right to participate in the litigation.   But that court felt constrained to apply the contrary doctrine announced in Lancaster v. Washington Life Ins. Co., 62 Mo. 127, which is followed also in In re Buck, 204 Mo. App. 9, 220 S. W. 1033; Davis v. Gillilan, 71 Mo. App. 501; and Donaldson v. Lewis, 7 Mo. App. 408.   Cases on the point are collected in Werner v. Fraternal Bankers' Reserve Society, 172 Iowa, 504, 154 N. W. 773, Ann. Cas. 1918A, 1011.

(i)   The Bergman case goes too far in saying evidence of the grant of letters should be received only in actions wherein the personal representative is a litigant.   Such proof is not only admissible but collaterally conclusive when the issue is on the *legal*
**Missouri** *status* of the administrator and his acts as such, whether
**Cases.** he be a party or not, as in an ejectment suit where the title to land is founded on an administrator's deed—with the exception that the other party may attack the letters collaterally by showing the probate court had no jurisdiction over the subject-matter, as that the letters were granted on the estate of a living person; but it is also going too far to say, as the Lancaster case appears to do, that the letters are competent at all in an action not attacking the *status* of the administrator.   To that extent the decision, and those following it, should be overruled.

III.   (a)   If our conclusions in the preceding paragraphs are correct, the respondent's case is left hanging on the question as to the conclusive effect in this action of the finding and order made by the probate court on the administrator's application for authority to distribute $5,000 to the collateral heirs.   The order was part-
**Premature** ly good, partly bad.   The distribution was refused on
**Order.** the express ground that the deceased was a resident of Kansas; but the court went further and ordered the administrator to deliver the whole estate to the widow "after payment of the necessary costs of administration."   This was five months before final settlement, with the record affirmatively showing administration costs, including attorney fees, undetermined by the

court and unpaid. We think this latter part of the order was premature and void. [Brown v. Glover, 158 Mo. App. 399, 138 S. W. 105; Wadsworth v. Baldwin, 79 N. J. Eq. 274, 82 Atl. 326; In re Garrity, 108 Cal. 474, 38 Pac. 628, 41 Pac. 485; In re Schroeder, 99 N. Y. Supp. 183.] But we take the view that the order was responsive and valid insofar as it denied distribution to the heirs and assigned the residence of the intestate in Kansas as the ground for so doing. This far we hold it conclusive in this case.

(b) Proceedings for a probate distribution, like proceedings.for the appointment of an administrator, are said to be *in rem,* the *res* being property involved (24 C. J. sec. 1355, p. 508); but there is this difference—in the former, our statute provides for

**Proceeding in Rem: Finality.** personal service of notice on the resident distributees and publication service on non-residents (except when the distribution is made at a regular settlement). [Sec. 237, R. S. 1919; Sec. 241, Laws 1921, p. 115.] The right of appeal is allowed. [Sec. 282, R. S. 1919.] Questions concerning advancements may be litigated (In re Estate of Elliott, 98 Mo. 382, 11 S. W. 739),˙and the indebtedness of distributees to the estate offset against their distributive shares (Lietman's Exr. v. Lietman, 149 Mo. 118, 50 S. W. 307). Conceding (but not deciding) the jurisdiction is limited to the property involved and that no personal judgment can be rendered even when the parties are in court, yet it is plain the proceeding is structurally such that distributees may legally appear, prosecute or defend, and appeal. They can, in other words, make themselves parties. [Womach v. St. Joseph, 201 Mo. 478, 100 S. W. 443, 10 L. R. A. (N. S.) 140; Gratiot County State Bank v. Johnson, 249 U. S. l. c. 249.] That is precisely what the appellant and respondent in this case did do, and there is no .reason why they should not be˙ bound by the result. It was not necessary that all the distributees personally intervene in the probate proceeding, nor is it necessary that all be parties to this. [State ex rel. v. Patton, 271 Mo. 560, 197 S. W. 353.]

(c) It does not follow that there can be no estoppel by *verdict* on the question of residence, because the probate proceeding was *in rem.* A proceeding *in rem* is the antithesis of a proceeding *in personam,* but not necessarily of a proceeding *inter .partes.* The heart of the doctrine of *res judicata* is not the character of

**Estoppel by Verdict.** relief awarded in the former action; it is the fact that the litigants have had their day in court on the issue. [Womach v. St. Joseph, 201 Mo. l. c. 490.] The law applies it to those who have made themselves adversary parties to a judicial proceeding (the procedure permitting) though no personal judgment can follow. This has been expressly held of probate orders of distribution (Young v. Byrd, 124 Mo. 597, 28 S. W. 83; Bramell v.

Cole, 136 Mo. 209, 37 S. W. 924), and generally (34 C. J. sec. 1663, pp. 1173-4; Sly v. Hunt, 159 Mass. 151, 34 N. E. 187, 38 Am. St. 403, 21 L. R. A. 680). In the case last cited the estoppel by verdict arose out of a will contest. There is authority on the point in this State (Benoist v. Murrin, 48 Mo. 48, 54; Hines v. Hines, 243 Mo. 495, 147 S. W. 774); and a *dictum* to the contrary in Byrne v. Byrne, 289 Mo. 122, 233 S. W. 461, which is followed in Canty v. Halpin, 294 Mo. 138, 242 S. W. 97. In both these cases it is said a will contest is not a proceeding *inter partes because* it is a proceeding *in rem,* and that, consequently, no estoppel by verdict results. On that point the two cases last mentioned should be no longer followed.

(d) The appellant would avoid the doctrine of *res judicata,* as applied to the order denying distribution, by attacking the order, itself, on two grounds. The first of these is the charge that the pro-

**Notice.** bate record fails to show the required notice of the application under Section 241, Laws 1921, page 115. This defense may be disposed of by saying that while the record does not show the notice was given, it does not show it was not given. It is silent on the point. In the absence of an affirmative showing therein to the contrary the law conclusively presumes in a collateral action every prerequisite jurisdictional step was taken. [Harter v. Petty, 266 Mo. 303, 181 S. W. 39; McIntyre v. St. L. & S. F. Ry. Co., 286 Mo. 244-5, 227 S. W. 1047.] The cases cited by appellants, Lilly v. Menke, 126 Mo. 190, 28 S. W. 643; State ex rel. Brouse v. Burnes, 129 Mo. App. 474, 107 S. W. 1094; and Baker v. Lumpee, 91 Mo. App. 560, deal with the law on the subject when the absence of notice is shown or admitted. The parol testimony of the administrator and his brother that they received no notice will not be permitted to impeach the record. [Oldaker v. Spiking, 210 S. W. 62.] Furthermore, the statute requires notice only to distributees "not applying therefor," and as the administrator filed the application through his brother, as attorney, we think neither of them was entitled to notice.

(e) The other assignment against the distribution order is that Judge ESTILL had no jurisdiction to make it. There are two points under this head, the first being that the record merely recites Judge

**Oath.** ESTILL *took* the oath of office, when he qualified as judge *pro tem.,* not that he took *and subscribed* the oath. There is nothing in this contention. The pertinent part of Section 2564, Revised Statutes 1919, is that the special judge "take and subscribe the same oath that the judge of probate is required to *take.*" (Italics ours.) The regular probate judge is required by Section 2543, Revised Statutes 1919, to "take" the oath prescribed by the Constitution for all officers. Section 6 of Article XIV of the Missouri Constitution says "take and subscribe." The words are obviously used interchangeably by the statutes mentioned, with the same meaning, and the order

should be similarly interpreted. At least it can be said, the use of the word "take" in the order does not amount to an affirmative showing that Judge ESTILL did not subscribe the oath, and with the record in this condition the law presumes he complied with the statute and Constitution. [State v. Allen, 267 Mo. 57-8, 183 S. W. 329.]

(f) The remaining point made is that when Judge ESTILL heard the evidence on the application for distribution and took the cause under advisement at the September term, 1921, of the probate court, he was sitting as special judge *pro tem.* under Sections 2563-2565, Revised Statutes 1919; that by force of these statutes his jurisdiction over the cause was not continuing, but limited to his tenure as such judge; and that, consequently, he had lost jurisdiction and had none when he called up the application and entered the order thereon, during the February term, 1922, while sitting again as judge *pro tem.* pursuant to another election. We agree to the premise, but not to the conclusion. His jurisdiction as judge under the election at the September term ended when he ceased longer to serve at that term. [Secs. 2563, 2565, R. S. 1919; Viertel v. Viertel, 212 Mo. 572, 111 S. W. 579.] But it by no means follows that the *court* lost jurisdiction of the cause. On the contrary the cause stood over from term to term until the April term, when Judge ESTILL, sitting as judge *pro tem.* during that term under another election, called it up and decided it, as the regular judge might have done, had he been presiding and advised of the issues. [Viertel v. Viertel, supra.] The parties had had their day in court. Both times Judge ESTILL was sitting as a court, not as an individual or as a special judge in that particular case only; and the order was in no way invalidated by his failure to communicate with the parties before he entered it. [State ex rel. v. Henderson, 164 Mo. 359, 64 S. W. 138.]

IV. Perhaps a word should be said about the effect of the estoppel on the defendant bonding company. If, as we have held, the administrator was bound by the finding of the probate court in passing on the application for an order of distribution, his bondsman is likewise bound, and bound conclusively. By entering into the engagement expressed in the bond (see Sec. 18, R. S. 1919) the defendant surety contractually obligated itself to answer for the conduct of the administrator in respect of all duties laid upon him by law and the decrees and orders of any court having jurisdiction. In so far as his duties in the matter here in issue are to be measured by the probate court's order, the order is binding on the other signers of the bond quite as much as it would be on the administrator if he were a party to the suit. [State to use v. Holt, 27 Mo. 340, 72 Am. Dec. 273; State ex rel. v. James, 82 Mo. 514; McPike v. McPike, 111 Mo. 229, 20 S. W. 12; Calhoun v. Gray, 150 Mo. App. 591, 131 S.

W. 478; 11 R. C. L. p. 303, sec. 351; Henry v. Heldmaier, 226 Ill. 152, 80 N. E. 705, 9 Am. & Eng. Ann. Cas. 155; Commonwealth v. Fid. & Dep. Co., 224 Pa. St. 95, 73 Atl. 327; P. Ballantine & Sons v. Fenn, 84 Vt. 117, 40 L. R. A. (N. S.) 708.]

V.   Finally, on the appellant's complaint against the submission to the jury of the question of vexatious delay.   The gist and meaning of the statute (Sec. 6337, R. S. 1919) is that when an insurance company has, without reasonable or probable cause or excuse, **Vexatious** obstructed a beneficiary by refusing to pay his loss under **Delay.** its policy, he may be allowed in his suit thereon the penalties prescribed. [Block v. U. S. Fid. & Guar. Co., 290 S. W. 441.]   But the vexatious obstruction or delay ordinarily must occur, or being, before the filing of the suit. [Fay v. Aetna Life Ins. Co., 268 Mo. 389, 187 S. W. 861.]   In this case the big disputed question of fact was concerning the domicile of the intestate.   This suit was filed on October 3, 1922, twelve days after the final settlement was made.   Even in the amended petition on which the respondent went to trial on January 30, 1924, an issue of fact was tendered on its merits on this question.   At the trial the respondent abandoned that theory and relied exclusively on the doctrine of *res judicata*.   The appellant's evidence on what had theretofore been the controlling question of fact was excluded. It may have been weak or strong, frivolous or substantial; but it was not before the court and jury.   The legal questions raised by the respondent's petition were such that lawyers well might differ, honestly and reasonably, thereon.   In these circumstances it was error to submit the question of vexatious delay. [Dolph v. Maryland Casualty Co., 303 Mo. 551-2, 261 S. W. 330; Aufrichtig v. Columbia Nat Life Ins. Co., 298 Mo. 15-16, 249 S. W. 912; State ex rel. v. Allen, 295 Mo. 319, 243 S. W. 839.]   Accordingly the items of $350 penalty and $1500 attorney fee, as returned in the verdict and carried into the judgment, should be stricken out of the latter, and the cause remanded with directions to enter judgment for plaintiff or relator, as of February 1, 1924, the date of the original judgment, for $8103.72 (this being the $7505.90 debt and $597.82 interest found by the jury), the same to bear interest from date until paid at six per cent per annum. [See Block v. U. S. Fid. & Guar. Co., 290 S. W. 1. c. 442.]   *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court.   All of the judges concur.